285 So.2d 796 (1973)
STATE of Louisiana
v.
Warner Lee WALLACE et al.
No. 53615.
Supreme Court of Louisiana.
October 29, 1973.
Kenneth L. Riche, Murphy W. Bell, Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., LeRoy A. Hartley, Asst. Atty. Gen., Ossie Brown, Dist. Atty., M. Stephen Roberts, Asst. Dist. Atty., for plaintiffs-appellees.
BARHAM, Justice.
These three defendants were convicted of armed robbery and each was sentenced to fifteen years' imprisonment. Numerous bills of exceptions were reserved and perfected. Finding reversable error under bills of exceptions reserved to the in-court identification by the victim, based upon pre-trial photographic identification, we *797 pretermit a discussion of the other bills of exceptions.
About five months before the trial of these defendants, a Mr. Witt was walking on Scenic Highway in Baton Rouge around eleven o'clock at night. A car, occupied by three black males (a driver, a passenger on the front right side, and a passenger on the right rear side), pulled up to the side of Mr. Witt. According to Mr. Witt, one of the occupants of the car said, "* * * hey man, how do you get across the river * * *?" Witt turned around to look, and a man sitting in the back seat of the car pulled a pistol and demanded his wallet. After looking through the wallet and finding it empty, the armed occupant laid it on the floor of the car and requested Witt to give him all of his change. Witt reached in his pocket and gave him all the change he had, which consisted of a quarter and two nickels. The man with the pistol then asked Witt if he wanted his wallet back, and when Witt said yes, his wallet was returned to him. Witt, the victim, was then told to move on. He testified that he crossed the street in front of the car and walked several blocks to an all-night restaurant when he found two police officers drinking coffee. He gave the police officers a description of the automobile and told them that there were three black males in the car. These officers secured the help of another police unit, which stopped a car in which these three defendants were riding. The two police units returned to the cafe with the three defendants and the car in which they were riding. The officers presented a pistol to the victim, which they had secured from the automobile, for identification. The victim told the officers it looked like the pistol which was used in the robbery.
The officers and the victim all testified that the victim had no opportunity to identify the three defendants upon their return to the cafe. The victim was never called upon by the police department to view a line-up. A preliminary hearing was scheduled on July 1, 1971, but the order granting the preliminary hearing was vacated before hearing could be had. Apparently subpoenas had been issued for the defendants, the victim and other witnesses to be present at the preliminary hearing. The trial was first set for September 15, 1971, and again subpoenas were issued for the defendants, the victim and other witnesses to be present for the trial. However, the case was passed over and re-assigned for trial November 22, 1971, when it actually did proceed to trial.
Although the trial was held on a Monday, the victim had been subpoenaed to appear at the district attorney's office during the previous week. The victim appeared at the district attorney's office in response to subpoena (C.Cr.P. Art. 66) on the Friday before the trial. He was given two cards, each of which contained five photographs. He picked from these photographs a picture of the defendant, Nicholas, and a picture of the defendant, Wallace.
At the trial on the Monday following this photographic identification, the State, without any indication of a prior photographic identification asked the victim if he could identify in the courtroom the three men who robbed him. Of course, at this time all three defendants were seated at the table in front of the courtroom with their counsel. The victim identified all three defendants. However, he admitted he was not quite positive about the identification of the driver, the defendant, Nicholas. He testified that the only illumination at the scene of the crime was a street light on one of the corners at the intersection where he was robbed.
On cross-examination, counsel for defendants began to lay the foundation for their principal attack upon the State's case. That attack obviously was that the victim could not identify the people who robbed him. Examination began with an inquiry as to whether or not Mr. Witt had told the father of one of the defendants that he could not identify the people who had robbed him. When he was asked, "Now, in other words, you're saying that once you *798 saw them today you remembered them as the ones that robbed you?" he then replied, "Well, it was in my mind all the time who did it and when I saw them. . . I went to the District Attorney's office . . . they called me to go over to the District Attorney's office and pick out some photographs." (Emphasis here and elsewhere supplied.)
When asked if he found the photographs of the defendants in the photographs he observed, he responded "He handed me a card with some photographs on it and told me that the accused was on there and I picked out who I thought it was."
On re-direct by the State the victim recants the statement that he was told the defendants were among the photographs he viewed. Mr. Witt testified that he had been to the courthouse on two occasions for the purpose of testifying about this case. He stated that he had not seen any of the defendants upon either occasion. He admitted that he had talked to the father and brother of the defendant, Nicholas, upon both occasions when he was in the courthouse.
When the defense put on its case, Irving Nicholas, Sr., Irving Nicholas, Jr., and Alton F. Baker, one of the defendants, testified that, upon the two occasions when they had been subpoenaed to appear in court before the trial of the case, Irving Nicholas, Sr. (father of one of the defendants, and uncle of the defendant, Baker), Irving Nicholas, Jr., and the defendants, Baker and Nicholas, confronted the victim Witt.[*] Their testimony is that upon both occasions the senior Nicholas talked with Witt and that Baker and the defendant, Nicholas, were within a few feet of Witt's face as they stood with the senior Nicholas. Upon neither occasion, it was their testimony, did the victim recognize or indicate recognition of the defendants, Baker and Nicholas. The victim, Witt, himself testified that he had never seen either of the two defendants, Nicholas or Baker, until he identified the picture of Nicholas at the photographic identification. He testified further that he saw Nicholas on the day of the trial and recognized him when he was sitting on one of the benches back in the courtroom. It is well to remember that Nicholas was the driver of the car and the one whom Witt acknowledged he had difficulty in identifying because of his poor view of the driver on the night of the robbery. The victim further testified that he had recognized the defendant, Wallace, the morning before trial when he saw him sitting in the hall. He did not recognize Baker until he saw him seated with the other two defendants and counsel during the trial.
In spite of vigorous objection, the trial court refused to consider as a question of law the issue of whether there was a tainted pre-trial identification which would render inadmissible the in-court identification of these defendants. It considered the question of whether the identifications were accurate or not to be entirely a question for the jury to resolve on the basis of the weight of the evidence. The sole question for the jury at the trial is whether or not the identification made by the witness on the witness stand is accurate. A defendant's Sixth Amendment right to counsel and his right to due process are not questions for the jury. "These are primary issues of fact conditioning the admissibility as a matter of law of the *799 identification evidence. As such these are solely for the suppression hearing [hearing out of the presence of the jury] judge." 38 Brooklyn L.Rev. 261, at 322.
The issue before us, therefore, is whether or not the photo-identification conducted in the district attorney's office three days before trial was, under the totality of the circumstances in this case, tainted to such an extent that the in-court identification of the defendants and the identification in court of the photographs were inadmissible.
Defendants first attack the issue upon the basis that the photographic identification was had without counsel being present. United States v. Ash, 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973) held that pre-trial photographic identification, even post-indictment, did not present a confrontation situation which requires the presence of counsel under the Sixth Amendment of the United States Constitution. The facts of that case, however, are interesting and the court's pretermission of another issue in that case is also of interest.
In the Ash case, four witnesses had identified the defendant, Ash, from among five black and white mug shots, prior to Ash being taken into custody and during the investigatory stage of the case. After indictment, and in preparation for trial almost three years after the crime, an FBI agent and the prosecutor showed five color photographs to prosecution witnesses, from which photographs the witnesses were asked to identify the defendant, Ash, and another defendant. None of the witnesses could identify the other defendant; three of the witnesses selected the picture of Ash. That post-indictment identification brought before the court the question of whether Ash had been denied the right to counsel at the critical stage of the prosecution.
Note at this point the factual differences in this casethe victim, Witt, had never been called upon to make any identification of the defendants until three days before trial. The defendants had been arrested and were in custody approximately five months before trial until they were released on bond. The defendants had been in court upon two other occasions when the victim was also present. Less than six months had elapsed from the date of the crime to the date of the trial.
Under the facts of Ash, and after a determination therein that the defendant, Ash, had not been denied a Sixth Amendment right in the post-indictment photographic identification, the United States Supreme Court stated, "Although respondent Ash has urged us to examine this photographic display under the due process standard enunciated in Simmons v. United States, 390 U.S. [377], at 384, 88 S.Ct. [967], at 971, 19 L.Ed.2d 1247, the Court of Appeals, expressing the view that additional findings would be necessary, refused to decide the issue. [United States v. Ash,] 149 U. S.App.D.C. [1] at 7, 461 F.2d [92] at 98. We decline to consider this question on this record in the first instance. It remains open, of course, on the Court of Appeals' remand to the District Court." United States v. Ash, supra, 413 U.S. at 321, 93 S.Ct. at 2579, 37 L.Ed.2d at 633.
The Ash decision has narrowed the question for our resolution. We are required to examine the facts of this case under Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). In Simmons, the defendant asserts, "* * * simply that in the circumstances the identification procedure was so unduly prejudicial as fatally to taint his conviction. * * *" The Court replied, "* * * This is a claim which must be evaluated in light of the totality of surrounding circumstances. * * *" The court stated:
"It must be recognized that improper employment of photographs by police may sometimes cause witnesses to err in identifying criminals. A witness may have obtained only a brief glimpse of a *800 criminal, or may have seen him under poor conditions. Even if the police subsequently follow the most correct photographic identification procedures and show him the pictures of a number of individuals without indicating whom they suspect, there is some danger that the witness may make an incorrect identification. This danger will be increased if the police display to the witness only the picture of a single individual who generally resembles the person he saw, or if they show him the pictures of several persons among which the photograph of a single such individual recurs or is in some way emphasized. The chance of misidentification is also heightened if the police indicate to the witness that they have other evidence that one of the persons pictured committed the crime. Regardless of how the initial misidentification comes about, the witness thereafter is apt to retain in his memory the image of the photograph rather than of the person actually seen, reducing the trustworthiness of subsequent lineup or courtroom identification. * * * Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. This standard accords with our resolution of a similar issue in Stovall v. Denno, 388 U.S. 293, 301-302, 87 S.Ct. 1967, 1972-1973, 18 L.Ed.2d 1199, 1206, and with decisions of other courts on the question of identification by photograph."
In the landmark case of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L. Ed.2d 1149 (1967), the Court held,
"We think it follows that the proper test to be applied in these situations is that quoted in Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441, 455, `"[W]hether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." * * * Application of this test in the present context requires consideration of various factors; for example, the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup [in-court identification], failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification. It is also relevant to consider those facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup.'" (Emphasis ours)
Since United States v. Wade was modified by Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), so that the constitutional safeguard of counsel at a lineup identification was restricted to post-indictment lineups, and since the Supreme Court in United States v. Ash has now stated that the right to counsel does not apply to photographic identification, even post-indictment, the courts will have to be careful to determine whether photographic identification is used post-indictment by the police or the prosecution in order to avoid the presence of counsel at a post-indictment lineup. People v. Lawrence, 4 Cal.3d 273, 280, 93 Cal.Rptr. 204, 209,481 P.2d 212, 217 (1971).
Every writer upon the subject attests to the fact that lineups legally conducted are fairer for the purpose of accurate identification than are photographic identifications. Wall says,
*801 "* * * Where the suspect is known and in custody, however, the showing of photographs to the witnesses is usually improper, even when the procedure used in showing them is a fair one. * * *"
P. M. Wall, Eye-Witness Identification in Criminal Cases, 1965 at p. 71. See also People v. Gould, 54 Cal.2d 621, 7 Cal.Rptr. 273, 354 P.2d 865 (1960), and People v. Holiday, 47 Ill.2d 300, 265 N.E.2d 634 (1970).
Since photographic identification is far inferior to lineup identification, it would appear that after a suspect is in police custody, there is seldom any justification for employing photo-identification. The argument is made to us that the photographic identification three days before trial was simply a part of preparing the State's case and such identification should not be treated differently from the interrogation of witnesses or other pre-trial preparation by the prosecutor. The answer to this contention is that photographic identification is treated differently by the United States Supreme Court at every stage of the proceedings. Identification of the defendant is the most necessary facet of most prosecutions. Its abuse can be noted from the numerous cases which have condemned pre-trial identifications. While the prosecution has a right to "prepare witnesses", it does not have the right to "prompt witnesses". 38 Brooklyn L.Rev. 261, at 297. Although the Supreme Court in Ash states that defense counsel had the equal opportunity for preparation of its case in the interrogation of witnesses, the display of photographs, etc., that court fails to take notice that in many jurisdictions, and particularly here in Louisiana, the subpoena power given to the district attorney, together with a total lack of pre-trial discovery on behalf of the defendant, make witnesses and photographs unavailable to the defendant. For a full discussion of pre-trial identification, see P.M. Wall, supra, (especially pp. 66 through 89 dealing with identification by photograph). 21 Syracuse L.Rev. 1235; 38 Brooklyn L.Rev. 261; 43 N.Y.U.L.Rev. 1019; 2 Rutgers Camden Law Journal 347; and 56 Iowa L.Rev. 408.
We move now to a consideration of this pre-trial identification to determine the legal question of whether the identification was tainted because of its unfairness to an extent that it constituted a denial of due process. The photographic identification in the instant case forms no part of the investigatory process. Although a preliminary examination and a previous trial both came up on the court's calendar, no lineup or photographic identification had been requested of the victim before the proceedings. No identification was sought for the purpose of determining whether these defendants were the ones who should be arrested. In fact, the officers testified that, on the night of the arrest of the defendants, in accordance with departmental policy, they shielded the defendants from the view of the victim so that he could not make an identification. The prosecution waited five months, that is, until three days before the trial, to prepare and present to the victim a photographic lineup. In the meantime, all three defendants had been present in the courthouse with the victim upon the two previous occasions. Two of these defendants were placed within feet of the victim, alongside one with whom the victim carried on a protracted conversation upon both occasions. The victim stated he never recognized any of the defendants on the two previous occasions.
On the day of trial, three days after photographic identification, the victim identified one of the defendants in the hall and one in the back of the courtroom. Most importantly, his first statement about the photographic identification was that those conducting the identification told him the defendants were among the photographs he was about to view. It was stated in Simmons v. United States, "* * * The chance of misidentification is *802 also heightened if the police indicate to the witness that they have other evidence that one of the persons pictured committed the crime. * * *" Here, according to the victim's own testimony, he was more influenced, for he was told he would view the defendants among the photographs. Although the victim recanted this on re-direct examination by the State, his first spontaneous statement is accepted by this court as being the truth. That finding is supported by the peculiar circumstances which we have enumerated as the facts leading up to the final in-court identification. We are of the opinion that the photographic identification by the victim of these defendants was tainted to an extent which constituted a denial of due process to the defendants.
Since the actual evidence of the pre-trial identification was not adduced during presentation of the State's case on direct examination, we will examine the in-court identification to see if it is supported as an identification from independent sources, i.e., sources other than the photographic identification. We find no circumstances given by the victim which indicate any independent source for his identification of Nicholas, Baker and Wallace. Upon two previous occasions when he was in close proximity to two of them and facing them he failed to identify either. Even on the day of trial, after the tainted photographic identification, he admitted he could not positively identify Nicholas and yet he proceeded to do so. We are concerned that Witt's previous confrontations with Nicholas in the hall of the courthouse tainted his subsequent photo-identification of that defendant.
We come now to the question of whether the tainted identification of Wallace and Nicholas by the photographic display three days before trial can be claimed as reversable error for the defendant Baker. Baker's photograph was not among those used in the pre-trial identification. However, amazingly, the victim testified that he spotted both Nicholas and Wallace, who had been identified from the photographs before the trial started, outside the courtroom and in the courtroom before trial. He testified that he did not recognize the defendant Baker until he saw him sitting before the bar with the other defendants during the trial. On the record before us we must conclude that Baker's identification by the victim resulted from the victim's association of Baker with the two other defendants at the counsel table during the trial. Also the same concern we have expressed that previous confrontations of Nicholas in the courthouse had tainted the victim's photo-identification of Nicholas applies to the possibility of taint in the trial identification of Baker.
We conclude finally that there is no independent in-court identification of any of the defendants, that the out-of-court identification of Nicholas and Wallace was tainted to the extent that it constituted a denial of due process, and that this taint also denied constitutionally required due process and fair trial to the co-defendant, Baker.
The convictions and sentences are set aside and the case is remanded to the trial court.
SANDERS, C. J., dissents and assigns written reasons.
SUMMERS, J., dissents and assigns written reasons.
MARCUS, J., dissents.
SANDERS, Chief Justice (dissenting).
In preparation for trial, the Assistant District Attorney undertook to test the ability of the robbery victim to identify the defendants Wallace and Nicholas by showing *803 him ten photographs, including those of the two defendants. From these photographs, the victim selected the photographs of the two defendants.
At the trial, without reference to the photographs, the victim identified the three defendants by pointing them out in the courtroom.
The occurrence of the photographic identification was brought out by defense counsel on cross-examination.
Because of the preparatory photographic identification, the majority now reverses the conviction. I disagree.
The pre-trial photographic display was designed solely to test the recognition of the victim as part of the trial preparation. In my opinion, it was not unfairly suggestive. The victim had the burden of selecting his assailants from the collection of photographs.
Since the photographic identification was not impermissibly suggestive, it cannot adversely affect the in-court identification. The adequacy of that identification, of course, was a factual question for the jury.
For the reasons assigned, I respectfully dissent.
SUMMERS, Justice (dissenting).
The majority relies on an inadvertent statement by the victim that the State's attorney told him at the photographic identification that the defendants were in the group of photos shown. This statement was later corrected by the victim, thus placing his credibility directly at issue. On this important and vital issue the majority reverses the jury and the trial judge. Again this Court usurps the prerogative of the fact-finder.
I dissent.
NOTES
[*] For some reason unknown to this Court, the transcript of these proceedings was inaccurate and incomplete. On a motion after trial in the district court, it was established that testimony of five or six defense witnesses was incomplete or totally omitted from the record. The trial court permitted the witnesses, whose testimony was directed at the question of identification, to testify again after the trial. This testimony was then made a part of the transcript and the bills of exceptions filed before us. Both the defense and State agreed that the entire transcript of proceedings at trial and upon the motion to complete the transcript is before us for review of this case. We have examined both transcripts.