658 So.2d 307 (1995)
STATE of Louisiana
v.
Mike JONES.
No. 94 KA 1098.
Court of Appeal of Louisiana, First Circuit.
June 23, 1995.
Rehearing Denied August 17, 1995.
*309 Stephen E. Caillouet, Thibodaux, for appelleeState of Louisiana.
F. Hugh Larose, Jr., Thibodaux, for defendant-appellantMike Jones.
Before LeBLANC, PITCHER, and FITZSIMMONS, JJ.
FITZSIMMONS, Judge.
The defendant, Mike Jones, was charged by grand jury indictment with distribution of cocaine, in violation of LSA-R.S. 40:967. He pled not guilty and waived his right to a jury trial. After a bench trial, he was found guilty as charged. The defendant received a sentence of two hundred twenty months at hard labor, with credit for time served. He has appealed, alleging two assignments of error,[1] as follows:
1. The evidence was insufficient to identify the defendant and support the instant conviction.
2. The trial court erred in imposing an excessive sentence.
We find that under the particular facts of this case, the identification process was unreliable and violated due process. Because we find this reversible error, we pretermit discussion of defendant's other assignment of error.
On the night of August 15-16, 1991, Gary Stevenson, the Assistant Chief of Police in Baldwin, Louisiana, was working as an undercover narcotics agent with the LaFourche Parish Drug Task Force (LPDTF). Agent Stevenson, who was accompanied by an unidentified confidential informant (CI), was attempting to make undercover narcotics purchases in Thibodaux, Louisiana. The August 15 undercover operation started about 7:30 or 8:00 p.m.
While driving on St. Charles Street, in a mostly residential neighborhood, Agent Stevenson observed a black male sitting in a folding chair, or lawn chair, on the sidewalk. The black male shouted to Stevenson and the CI. Agent Stevenson exited his vehicle and approached the black male, who indicated that he had "some rocks" for sale. Stevenson observed that the suspected dealer had various sizes of cocaine rocks contained in match boxes, apparently sorted according to the size of the cocaine rocks, and all of the match boxes were contained inside a King Edward cigar box. After an abbreviated conversation about the cocaine, Stevenson purchased a single cocaine rock for $30.00. In purchasing the cocaine, Agent Stevenson got no closer to the dealer than two to three feet. The dealer never got up from the lawn *310 chair. Agent Stevenson did not know the name of the dealer. The entire transaction took approximately two minutes. This buy was one of 3 or 4 made that evening.
The transaction occurred at 12:40 a.m., on August 16. Agent Stevenson testified that the area was illuminated by a streetlight about fifty feet away. Agent Stevenson did not know the seller. When Agent Stevenson returned to his vehicle and drove away, the CI identified the seller as Mike Jones. The record gives no indication that the CI left the vehicle and approached the dealer with Agent Stevenson.
Stevenson placed the cocaine rock inside an envelope. On the outside of the envelope he wrote the suspect's name, the time, the place of the transaction, and a clothing description of the suspect. Agent Stevenson identified the place where the transaction occurred only as St. Charles Street. He gave no indication of a specific address. He did not write down a physical description of the suspected dealer. He only noted that the suspect had a medium build. Agent Stevenson defined medium build as between 145 to 160 pounds. An estimation of height was not included.
Agent Stevenson called his supervisor, LPDTF Agent Octavio Gonzalez shortly after the buy. Undercover Agent Stevenson gave Agent Gonzalez the name, Mike Jones, supplied by the CI. After getting the name, Agent Gonzalez located a 1983 arrest photograph of the defendant. At approximately 1:00 a.m., Agent Stevenson met with Agent Gonzalez at the sheriff's office. Agent Stevenson turned over the envelope containing the cocaine to Agent Gonzalez. Within 30 to 40 minutes of the St. Charles Street buy, Agent Gonzales showed the single, eight year old photograph of Mike Jones to Agent Stevenson. Agent Stevenson identified the person in the photograph as the perpetrator of the instant offense. Agent Gonzalez testified that Agent Stevenson did not have any difficulty in identifying the photograph of Mr. Jones. It was the only photograph shown to Agent Stevenson.
At the trial, Agents Stevenson and Gonzalez related the details of this drug transaction and the identification of the defendant as the perpetrator. Agent Stevenson identified the defendant in-court as the individual that sold the cocaine on August 16. When asked if the in-court identification was based on an independent recollection, Agent Stevenson responded, "Yes." He indicated that he specifically remembered this particular drug transaction as unusual because the defendant was seated in a chair beside the street. He explained that the seller usually approaches the buyer's vehicle; but, in the instant case, Agent Stevenson got out of his car and approached the defendant. However, when asked if the dealer had a beard or mustache, Agent Stevenson could not remember. Agent Stevenson noticed no special marks or tatoos. However, Agent Stevenson also testified that he remembered every person he arrested that had gone to court over a period of seven years, approximately 500.
The CI did not testify at the trial. He was identified only as a black male.
The defense presented the alibi testimony of the defendant and four of his relatives: his mother (Annie Mae Jones), brother (Lionel Jones), and two sisters (Angela and Barbara Jones). All of the defense witnesses testified that the defendant's birthday was August 13. With the exception of Lionel Jones, who was unable to recall the specific date, all of the defense witnesses testified that the family gave a surprise birthday party for the defendant which began in the early evening hours of August 15, 1991, and lasted until approximately 1:00 or 2:00 a.m. the following morning. However, when the defense witnesses were questioned about whether the defendant worked on the day of the party or the next morning, the answers conflicted with defendant's recollection.
The defendant testified that Agent Stevenson's testimony was not true. He indicated that, in August of 1991, he lived with his grandmother on Popcorn Lane in Labadieville and he did not know anyone who lived on St. Charles Street in Thibodaux. According to the defendant, on the night of August 15-16, 1991, he was at his surprise birthday party. The defendant testified that he did not work on August 15 or August 16 of 1991, *311 but did work one or two days during the week of his birthday.
In stark contrast to Agent Stevenson's description, Mr. Jones testified that he weighed close to 183 pounds and had for several years. Mr. Jones stated that he had two tattoos that would be visible below a short sleeved shirt and, in 1991, he wore a beard. In the 1983 photograph, he had no beard or mustache.

INSUFFICIENCY OF EVIDENCE
On appeal, the defendant attacks the identification as suggestive and unreliable, and argues that the suggestive procedure led to a substantial likelihood of misidentification. Because the identification was tainted, defendant argues that the evidence was insufficient to establish beyond a reasonable doubt his identity as the perpetrator.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the state proved the essential elements of the crime and the defendant's identity as the perpetrator of that crime beyond a reasonable doubt. See La.C.Cr.P. art. 821; State v. Johnson, 461 So.2d 673, 674 (La.App. 1st Cir.1984). Where the key issue is the defendant's identity as the perpetrator, rather than whether or not the crime was committed, the state is required to negate any reasonable probability of misidentification. State v. Richardson, 459 So.2d 31, 38 (La. App. 1st Cir.1984). Positive identification by only one witness may be sufficient to support the defendant's conviction. State v. Royal, 527 So.2d 1083, 1086 (La.App. 1st Cir.), writ denied, 533 So.2d 15 (La.1988).
Single photograph identifications should be viewed in general with suspicion. State v. Harper, 93-2682 p. 5 (La. 11/30/94), 646 So.2d 338, 341. The requirement that an identification procedure not be suggestive applies equally to lay and law enforcement witnesses. State v. Williams, 613 So.2d 252, 257 (La.App. 1st Cir.1992). An identification procedure is unduly suggestive if, during the procedure, a witness's attention is focused on the defendant. State v. Hawkins, 572 So.2d 108, 112 (La.App. 1st Cir.1990). However, even should the identification be considered suggestive, this alone does not indicate a violation of the defendant's right to due process. It is the likelihood of misidentification which violates due process, not merely the suggestive identification procedure. State v. Lewis, 489 So.2d 1055, 1057-1058 (La.App. 1st Cir.), writ denied, 493 So.2d 1218 (La.1986).
With regard to in-court identifications, the standard to be used for determination of admissibility is whether, under the totality of the circumstances, the suggestive identification procedure led to a substantial likelihood of irreparable misidentification. With the deletion of the word "irreparable," the standard serves as well for admissibility of testimony concerning out-of-court identifications. Neil v. Biggers, 409 U.S. 188, 196, 93 S.Ct. 375, 381, 34 L.Ed.2d 401 (1972).
In Manson v. Brathwaite, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977), the U.S. Supreme Court concluded that "reliability is the linchpin in determining the admissibility of identification testimony...." The Manson court adopted the Neil v. Biggers analysis and listed factors to be considered in determining whether a photographic identification was reliable: (1) the witness's opportunity to view the defendant at the time the crime was committed; (2) the degree of attention paid by the witness during the commission of the crime; (3) the accuracy of any prior description; (4) the level of the witness's certainty displayed at the time of identification; and (5) the length of time elapsed between the crime and the identification. These factors are to be weighed against the corrupting effect of the suggestive procedure and identification. Id.
After considering the series of events leading up to the out-of-court identification, we find the identification procedure suggestive. The procedure employed focused Agent Stevenson's attention on defendant as the suspected dealer. Stevenson was shown only one photograph. He expected to be shown a photograph of the individual the *312 CI named as the dealer. No effort was made to seek a reliable, independent identification.
Having determined that the procedure was suggestive, we apply the Manson analysis, under the direction of State v. Martin, 595 So.2d 592, 595 (La.1992), to the facts of this case to determine whether Stevenson's ability to make accurate identifications outweighed the corrupting effect of the challenged identification procedure:
1. Opportunity to view: Agent Stevenson viewed the suspected dealer during the transaction for about two minutes, at night, on a street with a light fifty feet away.
2. Attention: Stevenson did not testify that he focused on the features of the particular suspected dealer, but that he was trained in identification procedures. He testified that he remembered all of the people he arrested that went to court.
3. Accuracy of prior description: Prior to the pre-trial single photographic identification, Stevenson gave no specific description of the suspected dealer, except that he was of medium build. The dealer did not stand and no notation of height was made by Stevenson. Stevenson noted no tatoos and when questioned could not remember if the dealer had a beard or a moustache.
4 and 5. Certainty and time: Stevenson relayed the name, Mike Jones, to Agent Gonzalez based on the CI's identification. Based on that information, Agent Gonzalez obtained a 1983 photograph of Mike Jones. Agent Gonzalez showed the photograph to Stevenson within 40 minutes of the buy. After being shown only the one photograph, that of the individual named by the CI from a distance, Stevenson positively identified the individual in the photograph as the suspected dealer. Agent Gonzalez testified that Stevenson had no difficulty in identifying the single photograph as the suspected dealer. More than 18 months later, Agent Stevenson identified the defendant in court as the dealer.
Although the procedure had some positive aspects, these were outweighed by the corrupting effect of the initial suggestive procedure. The series of events leading to the identification of the single photograph, when considered in their totality, impermissibly predisposed Stevenson to identify the individual in the photograph, Mike Jones, as the suspected dealer. Agent Stevenson made the identification after a long night involving more than one buy. A substantial possibility exists that the Stevenson identification of the eight year old Jones photograph was influenced by expectations generated by the CI's information and compounded by the use of a single photographic display. See State v. Wallace, 285 So.2d 796, 801-02 (La.1973). We conclude that the out-of-court identification was made under circumstances that led to a substantial likelihood of misidentification of the defendant as the alleged dealer.
Stevenson indicated that his in-court identification was based upon his independent recollection of the defendant and the unusual circumstances of the drug transaction. This testimony could have been persuasive, but for the corrupting effect of the suggestive out-of-court identification procedure on the in-court identification. A period of over 18 months elapsed between the buy and Agent Stevenson's confrontation with defendant on the day of the trial. Once having seen the single photograph of Mike Jones, the last step in the suggestive identification procedure, it is a real possibility that Stevenson's recollection of the defendant derived from the suggestive identification procedure and photograph of defendant, rather than the brief nighttime encounter during the buy. See Wallace, 285 So.2d at 800. Additionally, Stevenson's positive in-court identification, allegedly based on an independent recollection of Mr. Jones, is somewhat undermined by the claim that Stevenson remembers 500 or so people that he has arrested over a period of seven years. The suggestive out-of-court identification procedure, and resulting unreliable identification, tainted the in-court identification and presented a substantial likelihood of irreparable misidentification. We can find "no sufficient independent basis" for the tainted in-court identification. See Martin, 595 So.2d at 597; Wallace, 285 So.2d at 802. The likelihood of misidentification present in this case denied defendant his right to due process. See Wallace, 285 So.2d at 801-02.
*313 Without the identifications by Agent Stevenson, the evidence was insufficient to uphold the conviction. A reversal based on insufficiency of the evidence alone implicates the double jeopardy clause of the Fifth Amendment of the United States Constitution, applicable to the states through the Fourteenth Amendment. However, a reviewing court must consider all of the evidence submitted at trial to determine if a retrial is possible. State v. Martin, 595 So.2d at 597. After considering all of the evidence, including the inadmissable identifications, in the light most favorable to the prosecution, we cannot say the evidence was insufficient to convince any rational trier of fact that the state proved the essential elements of the crime, and the defendant's identity beyond a reasonable doubt.
We conclude only that the defendant's due process rights were violated. Because the conviction is set aside based on due process violations, rather than an insufficiency of the evidence, double jeopardy does not bar retrial. Geo-Je's Civic Ass'n, Inc. v. Reed, 525 So.2d 192, 197-98 (La.App. 1st Cir.1988); See Martin, 595 So.2d at 597-98; See generally State v. Wallace, 285 So.2d 796 (La.1973).
Therefore, we remand the case to the trial court for retrial. The district attorney's office must determine in good faith whether sufficient evidence can be produced to warrant a retrial, absent the tainted identifications.
For the foregoing reasons, the conviction is reversed, the sentence vacated, and the case remanded to the trial court for further proceedings consistent with this opinion.
CONVICTION REVERSED, SENTENCE VACATED, AND CASE REMANDED.
LeBLANC, J., dissents with reasons.
LeBLANC, Judge, dissenting.
I respectfully dissent from the result reached by the majority for the following reasons. The majority opinion concludes that the out-of-court identification of defendant was "made under circumstances that led to a substantial likelihood of misidentification of the defendant as the alleged dealer." I disagree with this conclusion.
Applying the analysis delineated by the Supreme Court in Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), to the facts of the instant case, I believe Agent Stevenson made reliable pre-trial and in-court identifications of defendant. Agent Stevenson had ample opportunity to view defendant at close range during the drug transaction. Stevenson testified that, as an undercover agent, he had received special training which emphasized the importance of identifying the suspect. According to Agent Gonzales, Stevenson made a positive identification of defendant from the photograph. Stevenson also indicated that his in-court identification was based upon his independent recollection of the defendant and the unusual circumstances of the drug transaction. Finally, although the pre-trial identification was made from a single photograph rather than a photographic lineup, the identification was made less than forty-five minutes after the drug transaction occurred. See State v. Harper, 93-2682, p. 5 (La. 11/30/94) 646 So.2d 338, 341-342 (wherein the Supreme Court, in reversing a cocaine distribution conviction on other grounds, refused to suppress an identification of the defendant from a single photograph when the photographic identification took place the day after the drug transaction occurred). Compare State v. Martin, 595 So.2d 592 (La.1992) (wherein the Supreme Court noted, in reversing a cocaine distribution conviction because of a tainted identification of the defendant from a single photograph, the photographic identification took place about a month after the drug transaction occurred.)
In finding the defendant guilty as charged, the trial court obviously accepted the testimony of Agent Stevenson and rejected the alibi testimony of the defendant and his relatives. As the trier of fact, the trial court was free to accept or reject, in whole or in part, the testimony of any witness. State v. Marshall, 479 So.2d 598, 603 (La.App. 1st Cir. 1985). Furthermore, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the *314 matter is one of the weight of the evidence, not its sufficiency. State v. Marshall, 479 So.2d at 603. On appeal, this Court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finders' determination of guilt. State v. Creel, 540 So.2d 511, 514 (La.App. 1st Cir.), writ denied, 546 So.2d 169 (La.1989).
I am convinced a rational trier of fact, viewing all of the evidence in the light most favorable to the prosecution, could have concluded the State negated any reasonable probability of misidentification and proved beyond a reasonable doubt that defendant was guilty of distribution of cocaine. Accordingly, I dissent from the reversal of defendant's conviction.
NOTES
[1] Defendant's counsel filed a brief raising two assignments of error. Defendant filed a pro se brief raising a different assignment of error, namely, that the trial court erred in admitting hearsay testimony. We reviewed the pro se brief under the direction of State v. Smalley, 599 So.2d 1090 (La.1992), but found no reversible error. The out of court statement was not submitted to prove the truth of the matter asserted, but to explain or clarify subsequent procedure. See State v. Brown, 491 So.2d 462, 464 (La.App. 1st Cir.1986).