STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

18-797

STATE OF LOUISIANA

VERSUS

DAVID BILLY PARKER, JR.

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 6566-16
HONORABLE GUY ERNEST BRADBERRY, DISTRICT JUDGE

**********

CANDYCE G. PERRET
JUDGE

**********

Court composed of D. Kent Savoie, Candyce G. Perret, and Jonathan W. Perry, Judges.

AFFIRMED IN PART, AMENDED IN PART, VACATED IN PART, AND REMANDED.

Mary Constance Hanes
Louisiana Appellate Project
Post Office Box 4015
New Orleans, LA 70178-4015
(504) 866-6652
COUNSEL FOR DEFENDANT/APPELLANT:
    David Billy Parker, Jr.

**John F. DeRosier**
**14th JDC District Attorney**
**Karen C. McLellan**
**Assistant District Attorney**
**Elizabeth B. Hollins**
**Assistant District Attorney**
**901 Lakeshore Drive, Suite 800**
**Lake Charles, LA 70601**
**(337) 437-3400**
**COUNSEL FOR APPELLEE:**
**State of Louisiana**

**PERRET, Judge.**

In this criminal appeal, David Billy Parker, Jr., ("Defendant") appeals his convictions of armed robbery and of false imprisonment with a dangerous weapon. For the following reasons, we hereby affirm Defendant's convictions. We vacate Defendant's sentence for false imprisonment with a dangerous weapon, and we remand the case for resentencing with the trial court being instructed to specify whether the sentence for false imprisonment with a dangerous weapon is to be served with or without hard labor. Defendant's sentence for armed robbery is affirmed as amended to reflect that it is to be served at hard labor, and it is affirmed as amended. Additionally, the trial court is directed to correctly inform Defendant of the provisions of La.Code Crim.P. art. 930.8 at resentencing.

**FACTS AND PROCEDURAL HISTORY:**

On September 5, 2014, Defendant held his victim captive at gunpoint during an armed robbery of Advance America. On February 23, 2016, Defendant was charged with armed robbery with a firearm, a violation of La.R.S. 14:64.3; armed robbery, a violation of La.R.S. 14:64; and false imprisonment with a dangerous weapon, a violation of La.R.S. 14:46.1. The State amended the bill on October 19, 2017, to merge the count of armed robbery with the count of armed robbery with a firearm.

Trial began on January 23, 2018. Defendant moved for a mistrial on January 24, 2018, based on the testimony of witnesses Belinda Richard and Diana Brown. The trial court denied the motion at the conclusion of the hearing and denied Defendant's request to stay the proceedings pending a writ application to this court. This court denied Defendant's writ application on the showing made because it "[did] not contain all of the testimony and evidence that is or could be

pertinent to the motion for mistrial[.]" *State v. Parker*, 18-64 (La.App. 3 Cir. 1/26/18) (unpublished opinion). This court also noted Defendant had an adequate remedy on appeal.[1] *Id.*

The jury found Defendant guilty of armed robbery and of false imprisonment with a dangerous weapon. Defendant filed motions for new trial and for a post-verdict judgment of acquittal on March 13, 2018; the motion for new trial included an argument for mistrial. The trial court denied the motions on March 14, 2018.

The trial court sentenced Defendant to seventy-five years without benefit of parole, probation, or suspension of sentence for armed robbery and to ten years for false imprisonment with a dangerous weapon. The trial court ordered the sentences to run consecutively to each other and consecutively to prior sentences in another case for a total of 140 years in jail, with credit for time served.

**ERRORS PATENT:**

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there are three errors patent.

First, the court minutes of sentencing indicate Defendant was sentenced to ten years in the Louisiana Department of Corrections on the false imprisonment conviction; however, the sentencing transcript does not indicate this. "[W]hen the minutes and the transcript conflict, the transcript prevails." *State v. Wommack*, 00-137, p. 4 (La.App. 3 Cir. 6/7/00), 770 So.2d 365, 369, *writ denied*, 00-2051 (La. 9/21/01), 797 So.2d 62. Because the sentencing transcript indicates the trial judge

---

[1]Although Defendant's counsel indicated she would file simultaneous writ applications with this court and with the Louisiana Supreme Court, the supreme court has no record of any filing.

did not designate whether this sentence was imposed with or without hard labor, we find the sentence is indeterminate. Accordingly, we vacate Defendant's sentence for false imprisonment with a dangerous weapon and the case is remanded for resentencing with the trial court being instructed to specify whether the sentence is to be served with or without hard labor. *State v. Roberson*, 06-1568 (La.App. 3 Cir. 5/2/07), 956 So.2d 736, *writ denied*, 07-1243 (La. 12/14/07), 970 So.2d 531.

Next, a hard labor sentence was required for Defendant's conviction of armed robbery. La.R.S. 14:64. As above, the court minutes indicate this sentence is to be served in the Louisiana Department of Corrections, but the transcript does not so indicate. The failure to impose the sentence at hard labor rendered it illegally lenient. *State v. Loyden*, 04-1558 (La.App. 3 Cir. 4/6/05), 899 So.2d 166. Thus, pursuant to La.Code Crim.P. art. 882, we amend the sentence to reflect that it is to be served at hard labor. *See State v. Matthew*, 07-1326 (La.App. 3 Cir. 5/28/08), 983 So.2d 994, *writ denied*, 08-1664 (La. 4/24/09), 7 So.3d 1193.

Finally, the trial court failed to properly advise Defendant of the prescriptive period for filing an application for post-conviction relief. The trial court informed Defendant that he had two years from "today" (sentencing) to file an application. Louisiana Code of Criminal Procedure Article 930.8 provides the defendant has *two years after the conviction and sentence become final* to seek post-conviction relief. Accordingly, we hereby direct the trial court to correctly inform Defendant of the provisions of La.Code Crim.P. art. 930.8 at resentencing.

**ASSIGNMENT OF ERROR NUMBER ONE:**

Defendant contends the trial court abused its discretion in denying his motion for mistrial after cross-examination revealed the District Attorney's Office

conducted a photo lineup with two eyewitnesses on the morning before they testified at trial, and the prosecutor failed to disclose the matter or correct the matter during a bench conference. He argues the State's misrepresentation "effectively deprived [him] of the opportunity to prepare a defense to the identification evidence by employing a different trial strategy, or at the very least, attacking the identification at a pre-trial motion to suppress." Defendant contends he "was unwittingly lead [sic] into bolstering the State's case by revealing the fact of a prior identification to the jury," which did him "considerable prejudicial harm[.]"

"[A] mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial . . . ." La.Code Crim.P. art. 775.

> Mistrial is a drastic remedy and, except in instances in which mistrial is mandatory, is warranted only when trial error results in substantial prejudice to defendant, depriving him of a reasonable expectation of a fair trial. *State v. Smith,* 433 So.2d 688 (La.1983). Whether a mistrial should be granted is within the sound discretion of the trial court, and denial of a motion for mistrial will not be disturbed on appeal absent an abuse of that discretion. *State v. Brown,* 96-1002 (La.App. 5 Cir. 4/9/97), 694 So.2d 435, 439, *writ denied,* 97-1251 (La.10/31/97), 703 So.2d 19.

*State v. Campbell*, 13-130, p. 8 (La.App. 5 Cir. 10/30/13), 128 So.3d 1137, 1141. Even when a mistrial is warranted, "the failure to grant a mistrial would not result in an automatic reversal of defendant's conviction, but would be a trial error subject to the harmless error analysis on appeal. Trial error is harmless where the verdict rendered is 'surely unattributable to the error.'" *Id*. at 1142 (citations omitted).

Defendant, both on appeal and in his post-trial motions, relies on *State v. Wallace*, 285 So.2d 796 (La.1973). In *Wallace*, our supreme court reversed the

4

trial court and ordered a mistrial where the victim identified the defendants at trial after viewing photographic lineups a few days prior to trial. The three defendants robbed the victim, who immediately reported the crime to police at a nearby café. Police stopped a car fitting the victim's description and returned to the café with the vehicle, the three men riding in it, and a pistol found in the vehicle. Although the victim identified the pistol, he had no opportunity to identify the three men. He was never asked to view a lineup.

On the Friday before the Monday trial, the victim was shown two cards, each of which contained five photographs. The victim identified two of the defendants. At the trial on Monday, the State's counsel asked the victim if he could identify the three men who robbed him; the victim pointed out the three defendants sitting at the table in the front of the courtroom with their counsel. The victim testified he was "not quite positive" about his identification of the alleged driver, and he said a street light was the only illumination at the crime scene. *Id.* at 797.

The supreme court dismissed the State's argument that the photo lineup identification was simply part of its pretrial preparation. Police officers had shielded the victim from the defendants at the time of their arrest. The State waited five months, until three days prior to trial, to present the photo lineup. No photographic identification had been requested from the victim on the two prior occasions when the case came up for trial. While two of the defendants had been within feet of the victim during protracted conversations with him and another witness on both of the prior trial dates, the victim testified he never recognized any of the defendants on either occasion. Nevertheless, three days after the victim's photo identification, he recognized one defendant in the hallway and another one in

5

the courtroom. The court put great weight on the fact that the victim said he was told the defendants' photos were among those he viewed, heightening the chance of misidentification, even though the victim recanted that testimony during the State's re-direct examination. Thus, the court opined the photo identification was tainted to the extent it violated the defendants' due process rights.

The court next determined the victim's identification was not supported by sources other than the photo identification. It found nothing in the circumstances reported by the victim to substantiate his identification. Although the victim was able to identify the defendants Nicholas and Wallace, who he had identified at the photo lineup, at trial, he could not identify the defendant Baker until he saw him sitting at the defense table at trial. The court concluded the photo lineup identification of Nicholas and Wallace possibly tainted the in-court identification of all three defendants. Thus, the court vacated the defendants' convictions and sentences and remanded the case to the trial court.

The supreme court distinguished *Wallace*, 285 So.2d 796, in *State v. Williams*, 375 So.2d 364 (La.1979). The *Williams* defendant contended the trial court erred when it denied his motion to suppress the victim's in-court identification as "tainted by an abortive attempted pretrial identification of the defendant." *Id.* at 369.

The victim could not identify the defendant when, prior to trial, she was shown a group of photographs, which included the defendant's picture. However, she positively identified him at trial. The defendant had the opportunity to question the victim about the photo lineup. She testified the photographs she saw did not really look like the defendant, and she could not remember until she saw him in person at the trial.

6

The supreme court distinguished *Wallace*, 285 So.2d 796, because the victim there was told the defendants' pictures were included in the photo lineups. Further, the *Wallace* in-court identification was based on the photo lineup, but in *Williams*, 375 So.2d 364, the victim could not identify the defendant from his photo.

The *Williams* court commented, "Even if suggestive identification procedures are proven by the defense, it is the likelihood of misidentification, and not the mere existence of suggestiveness, which violates due process." *Id.* at 369. The court noted the five-factor test of *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243 (1977), which balances "the corrupting effect of a suggestive identification." *Williams*, 375 So.2d at 369. Those five factors are:

> the witness' opportunity to view the crime; the degree of attention paid by the witness; the accuracy of any prior description; the level of certainty displayed at the confrontation; and the amount of time between the crime and the confrontation.

*Id.*

The crime occurred during the day in a well-lit environment. The victim was face-to-face with the robber, and he made no attempt to hide his features. They engaged in a protracted struggle, and the victim recalled previous contacts with the defendant. The victim's in-court identification was unequivocal even though the incident was seven months prior to trial, and she was unable to identify the defendant in the photo lineup. After applying those factors, the *Williams* court determined the in-court identification "had a basis independent of any alleged, but unspecified, improprieties committed during the photographic line-up." *Id.* at 370.

In *State v. Lynch*, 94-543 (La.App. 1 Cir. 5/5/95), 655 So.2d 470, *writ denied,* 95-1441 (La. 11/13/95), 662 So.2d 466, one of the victims gave police a detailed description of the man who robbed him and his wife at gunpoint in their home. At trial, the victim testified he was ninety percent certain the defendant was

that man.  On appeal, the defendant argued the trial court should have granted his motion for mistrial because the State led him to believe the victims could not identify their assailant, and he suffered prejudice from the in-court identification.

The defendant contended he would have presented a different defense had he known the victim would identify him at trial.  The victim had told the Assistant District Attorney he thought he could make the identification after looking closely at the defendant earlier in the trial.  The trial court denied the motion for mistrial after noting "the discovery statutes do not require the State to inform the defense about identification procedures[.]" *Id.* at 478.

The first circuit noted:

> The discovery rules of the Louisiana Code of Criminal Procedure are intended to eliminate unwarranted prejudice which could arise from surprise testimony. Discovery procedures enable the defendant to properly assess the strength of the state's case against him in order to prepare his defense. If a defendant is lulled into a misapprehension of the strength of the state's case by the failure to fully disclose, such prejudice may constitute reversible error. *State v. Johnson,* 604 So.2d 685, 691 (La.App. 1st Cir.1992), *writ denied,* 610 So.2d 795 (La.1993). The articles regulating discovery do not specifically require the state to provide information concerning a witness's ability to identify the perpetrator, and a defendant has no general constitutional right to unlimited discovery in a criminal case. *See* La.C.Cr.P. arts. 716–723; *State v. Brossette,* 93-1036 (La.App. 3d Cir. 3/2/94), 634 So.2d 1309, 1317, *writ denied,* 94-0802 (La. 6/24/94), 640 So.2d 1344.

*Id.*  The first circuit found the State's discovery responses were not designed to mislead the defendant.  Further, the defendant failed to show how he would have changed his strategy had he known the victim would identify him.  The defendant had the opportunity to cross-examine the victim and show he had never viewed a live or photo lineup and had told no one except the State's counsel he thought he could identify the defendant.  Additionally, testimony showed the victim was not positive of the identification.  The first circuit held the "defendant suffered no

*substantial* prejudice[,]" his right to present a defense was not adversely prejudiced by the identification, and he did not propose a "viable alternative trial strategy." *Id*.

In *State v. Elie*, 05-1569 (La. 7/10/06), 936 So.2d 791, the defendant sought a mistrial because the State failed to provide evidence of his prior convictions. The supreme court noted the State's continuing duty to disclose that information under discovery rules in order "to eliminate any unwarranted prejudice which could arise from surprise testimony." *Id.* at 802. However, the court found:

> not every failure by the State to comply with these rules automatically requires a reversal. Only when such a failure results in prejudice to the defendant does it constitute reversible error. Thus, in the event the State failed to comply with the discovery rules, it must be determined whether the non-disclosure actually prejudiced the defendant and whether the trial court abused its discretion.

*Id.* After determining the defendant suffered no prejudice from the discovery violation, the supreme court reversed the appellate court and held the trial court correctly denied the defendant's motion for mistrial.

Here, Defendant directed a discovery request to the State on April 15, 2016. The request did not seek anything that would have created an ongoing obligation by the State to produce the photographic lineup or to notify Defendant of the witnesses' identification on the morning of their testimony. On August 2, 2016, the State authorized open file discovery.

The State's witness Diana Brown testified a man came to the door of Advance America on September 5, 2014, opened it, and told her someone would be there to take her payment soon. They spoke for "a couple of minutes[.]" Ms. Brown told police the man was "about five-six" with "[l]ight brown skin[,]" and "wearing a blue, they call them 'Nomex,' like the suits they wear at the plants." He had a short haircut. Ms. Brown saw the man again when she arrived in court to

testify at trial. The State's counsel questioned her about her identification of Defendant:

> Q. Now, do you recall – folks from the district attorney's office asked you if you'd be able to recognize him?
>
> A. Uh-huh.
>
> Q. Okay, and when you got in court earlier today to be sworn in did you get a look at him?
>
> A. Yes.
>
> Q. Okay.
>
> A. Yes, I recognized him.
>
> Q. And do you recognize him?
>
> A. Yes.
>
> Q. Can you point him out in the courtroom as to where he is?
>
> A. He's sitting right there in the black suit with the white shirt.

Defendant's counsel referred to this testimony when he cross-examined Ms. Brown; however, we find that he did not properly represent what she had said. After a few questions about what happened at the store that day, counsel asked Ms. Brown:

> Q. Now, you just testified a moment ago that folks from the D-A's [sic] office approached you about looking at a photo of someone?
>
> A. Uh-huh.
>
> Q. They asked you to identify that photo?
>
> A. Right.
>
> Q. And you knew that was – you picked [Defendant's] photo?
>
> A. Right.
>
> Q. And you identified him here in court?
>
> A. Right.

Q. And that's why you were called as a witness?

A. Right.

Q. And that photo array – that photo that you saw, that was the first time that anybody showed you a photo in this investigation?

A. Right.

Q. And it's been over two years –

A. Yeah.
Q. – since this happened in 2014?

A. Uh-huh, yes.

Q. And you had no reason to think that that day was special in any way?

A. No.

Q. And you only spoke with that man at the door for a couple of minutes?

A. Right.

Defendant's brief argues "[o]n cross-examination, Diana Brown also revealed that people from the D.A.'s Office showed her a photographic lineup (that day, January 24, 2018) and that she had picked out the photo of [Defendant]." However, we find the record shows no such conclusion. Ms. Brown did not testify someone from the District Attorney's office approached her about looking at someone's photo. She only agreed someone from the District Attorney's office asked if she could recognize the man at Advance America. She said she got "a look at him" when she arrived in court for trial. She recognized the man in the courtroom and pointed him out to the jury.

Neither the State's counsel nor Defendant's counsel ever asked Ms. Brown if she had viewed a photo lineup or when that might have occurred. Even though Defendant's counsel asked Ms. Brown about viewing a "photo array" and about

11

looking at a photo she identified as Defendant's, he never established when that viewing may have occurred or about any of the circumstances surrounding it. Ms. Brown's testimony provides no basis for Defendant's argument that the trial court should have granted a mistrial because she viewed a photo lineup on the morning of trial when the record fails to show she did. Further, as shown below, if the trial court erred in denying the motion for mistrial, the error was harmless. Accordingly, we find Defendant's complaints about Ms. Brown's photo identification of Defendant on the morning of trial lack merit.

Belinda Richard went to Advance America on September 5, 2014, to make a loan payment. She found the door locked, and a man she had never seen before came to the door and told her the manager was at Wal-Mart. When asked to describe the man, Ms. Richard pointed to Defendant, who was sitting at the defense table. Defense counsel objected, arguing Ms. Richard had not previously identified Defendant and was never shown a lineup. She contended the in-court identification was unduly prejudicial, and Ms. Richard had previously given only "a very generic description at the time when she was first interviewed by officers . . . ." The State responded that Ms. Richard was not required to give a previous identification, and Defendant would have the opportunity to cross-examine Ms. Richard and other witnesses who would also identify Defendant. Shortly thereafter, the State's counsel asked Ms. Richard if she recognized the man she saw at Advance America in the courtroom, and if she could identify where he sat and what he wore. The trial court recognized the "proper in-court identification of the defendant[,]" and Defendant made no objection.

The State's counsel made no reference to Ms. Richard's prior view of a photo lineup. On cross-examination, defense counsel established Ms. Richard saw

the man at Advance America about five minutes and described him to detectives as a "not real dark" black male about five feet seven inches tall. When counsel asked Ms. Richard if detectives presented a photo lineup or pictures to her, she responded, "Not at that time." Ms. Richard testified the trial was her first time to identify Defendant in court, but she said she had identified Defendant from a photo lineup with six people in it earlier in the day at the District Attorney's office. Defense counsel pointed out Ms. Richard saw the man at Advance America for only five minutes two years prior to trial before she came into court and identified him. The State's counsel clarified Ms. Richard chose Defendant's photo from one of six she had seen in the lineup.

After Defendant's counsel moved for a mistrial, the State called Michelle Ledoux, felony trial assistant for the District Attorney's office, to testify. She testified Assistant District Attorney Jacob Johnson, the State's counsel, asked her on the day before to determine whether Ms. Richard and Ms. Brown could recognize Defendant in a photo lineup. She used the same type of photo lineup used by the Sheriff's Office. Ms. Ledoux did not suggest the robber's picture was in the lineup, point to any numbers, or infer any names.

The State introduced a copy of the photo lineup shown to the witnesses. The lineup shows six African-American men appearing to be about the same age, with similar hairstyles and features. Ms. Ledoux testified Ms. Richard and Ms. Brown both recognized Defendant's picture in the lineup and pointed to him without hesitation. Neither thought anyone else in the lineup could have been the robber she saw at Advance America. Ms. Ledoux's work was done as part of the State's trial preparation and prior to invoking the rule of sequestration. No exculpatory evidence pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963) was

13

elicited during the meetings with the witnesses, conducted separately from each other.

Applying the five-factor test of *Manson*, 432 U.S. 98, to Ms. Richard's identification, we find that Ms. Richard had a short but ample opportunity to observe the man at Advance America. She had never seen a man working there before, and the man acted as if he had never been there before. Ms. Richard had called to find out the store closed at 7:00 p.m., and she had arrived around 6:30 p.m. Because the circumstances to which Ms. Richard testified seemed unusual to her, we find this could have caused her to pay greater attention and to observe details that were different from her usual visits to the store. She described the man she later learned was the robber in a manner consistent with Defendant's appearance. She identified Defendant from the photo lineup without hesitation after careful consideration of all the photos; she said she knew him immediately, even though more than three years had passed between the robbery and the trial. We find nothing was suggestive about Ms. Richard's identification during her observance of the photo lineup, and her identification of Defendant was reliable.

Further, Defendant has pointed to no authority to show the State's obligation to tell him of the photo lineup identification on the morning of the witnesses' testimony. The State responded to Defendant's discovery requests and provided open file discovery. Ms. Ledoux's testimony did not indicate any intent by the State to mislead Defendant or gain an unfair advantage at trial. Defendant has not shown how or if he was lulled into a misunderstanding of the State's case against him by the failure to disclose the photo identification on the morning of trial. As in *Lynch*, 655 So.2d 470, Defendant has not shown how he would have changed his trial strategy had he known of the photo identification that morning. Defendant

had the opportunity to cross-examine both witnesses and point out any flaws in their identification. Thus, we find that the State's non-disclosure of the identification did not cause actual and/or substantial prejudice to Defendant. *See Lynch*, 655 So.2d 470 and *Elie*, 936 So.2d 791.

Additionally, if the trial court did err by denying Defendant's motion for mistrial, the error was harmless. An error is harmless when "the verdict was surely unattributable to the error." *State v. Chapman*, 96-152, p. 14 (La.App. 3 Cir. 10/9/96), 683 So.2d 1236, 1244, *writ denied,* 97-583 (La. 9/5/97), 700 So.2d 505.

Other evidence at trial clearly established Defendant as the man who robbed Advance America. The compelling testimony of Joanna Sanford alone, who spent an hour and a half in close proximity with Defendant as she feared for her life, was sufficient to establish Defendant's guilt beyond a reasonable doubt.[2]

Ms. Sanford identified Defendant at trial as the man who came in her store showing interest in renting space in the building. He returned two or three hours later inquiring about a loan and the whereabouts of Ms. Sanford's co-worker. Ms. Sanford was alone with Defendant in the store about an hour and a half. Defendant pulled a gun on Ms. Sanford and threatened to kill her. Defendant met customers who came to the door while Ms. Sanford lay on the floor behind the counter, and he told them the store had closed early. He told Ms. Sanford he had to have $3,000. Eventually, Defendant told Ms. Sanford he would not kill her if he could take the surveillance system. He said he would kill her and her family if he or anyone in the group with which he worked was identified.

---

[2]Defendant did not allege insufficiency of the evidence as an assignment of error on appeal.

On January 6, 2017, the State supplemented its discovery response to include a photographic lineup in which Ms. Sanford identified Defendant as "the man that robbed [her] at Advance America on Sept. 5, 2014 by gunpoint." The identification had been made on December 9, 2015, at 9:02 a.m. at the Longhorn Restaurant, a truck stop in Vinton.[3]

The detective in charge of the investigation contacted Ms. Sanford in December 2015, to say "she thought she had a possible suspect and asked if [Ms. Sanford] could help them identify him if that was the case. She asked Ms. Sanford to examine a group of photos "to see if it was possible that the guy who robbed [her] might be on it." She instructed Ms. Sanford to look very carefully at each picture more than once and to make sure she was confident with her answer. Ms. Sanford doubted the man who robbed her would even be on the photo sheet, even though she thought it was possible the man who robbed her was in the photo lineup. The detective "didn't make any comments, really, except to look carefully."

Ms. Sanford "knew immediately which photo was his" when she viewed the lineup. Nevertheless, she looked at every picture and examined them for about five minutes, looking at each one more than once. She "was 100 percent sure." She testified she would never forget his face. The detective did not lead her to any particular response. At trial, Ms. Sanford identified Defendant as the man she saw in her store that day who ultimately robbed her at gunpoint. She also testified she was "[a] hundred percent" sure the person she chose from the photo lineup was the man she pointed out at trial.

---

[3]Ms. Sanford lived in Orange, Texas. She and Detective Andree Daugereaux decided to meet in Vinton so that neither would have to drive as far as they would by meeting in Orange or in Lake Charles.

Detective Andree Daugereaux of the Calcasieu Parish Sheriff's Office was the lead detective on this case. About a year after this incident, she was speaking with other detectives who mentioned another case with similar details. The suspect in that other case was in jail. Detective Daugereaux asked for a photo lineup to be prepared, and she presented it to Ms. Sanford.

The detective confirmed Ms. Sanford examined each photograph, putting her finger on each one and looking at each face twice. Ms. Sanford had no idea of who the suspect might be. She selected Defendant's photograph. Detective Daugereaux said Ms. Sanford "was absolutely positive."

Detective Dustin Gaudet of the Lake Charles Police Department was involved in the investigation of an armed robbery at America's Best Suites on November 15, 2015, and an armed robbery on November 17, 2015, at "a payday loan place on Prien Lake Road," both in Lake Charles. A number of the details of those robberies matched the details of this incident. Defendant was convicted of both robberies.

We find that the jury, based on the evidence presented, would have convicted Defendant even without the testimony of Ms. Brown and Ms. Richard and without their identification of Defendant in the photo lineup on the morning of trial. The State did not rely on or use the photo lineup identification of Ms. Richard and Ms. Brown to prove its case. It had no obligation to tell defense counsel about the photo lineup identifications. Defense counsel raised the issue of the photo lineup; once he did, he opened the door for the State to pursue the line of questions. Defendant has not shown how the witnesses' viewing of the photo lineup prejudiced him or how he would have altered his defense had he known of the viewing or had he not brought it to the jury's attention. The State did not

17

misrepresent the strength of its case by failing to advise Defendant of the photo identification on the morning of trial. Accordingly, we find that the verdict was surely unattributable to the trial court's denial of Defendant's motion for mistrial, even if that denial was error.

## ASSIGNMENT OF ERROR NUMBER TWO:

Defendant argues the non-unanimous jury verdict violated his constitutional rights. He recognizes Louisiana courts have rejected this argument. However, "because the United States Supreme Court and/or the Louisiana Supreme Court may yet revisit the issue[,]" he preserved the issue for appeal.

Louisiana Code of Criminal Procedure Article 782(A) provides a defendant charged in a case "in which punishment is necessarily confinement at hard labor shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict." This language reflects the provisions of La.Const. art. 1, §17.

The Louisiana Supreme Court has held La.Code Crim.P. art. 782(A) does not violate the Fifth, Sixth, and Fourteenth Amendments of the federal Constitution. *State v. Bertrand*, 08-2215, 08-2311 (La. 3/17/09), 6 So.3d 738. Recently, in the November 6, 2018 election, Louisiana voters opted to change the constitutional provision and require unanimous verdicts. The amendment to La.Const. art. 1, §17 states:

> Section 17. **(A) Jury Trial in Criminal Cases.** A criminal case in which the punishment may be capital shall be tried before a jury of twelve persons, all of whom must concur to render a verdict. A case for an offense committed prior to January 1, 2019, in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, ten of whom must concur to render a verdict. A case for an offense committed on or after January 1, 2019, in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, all of whom must concur to render a verdict.

18

Because Defendant's offense occurred prior to January 1, 2019, the constitutional amendment does not apply to him. The pre-amendment provision and La.Code Crim.P. art. 782(A) were not unconstitutional. Thus, we find Defendant's assignment of error lacks merit.

**DECREE:**

In conclusion, we hereby affirm Defendant's convictions. We vacate Defendant's sentence for false imprisonment with a dangerous weapon, and we remand the case for resentencing with the trial court being instructed to specify whether the sentence for false imprisonment with a dangerous weapon is to be served with or without hard labor. Defendant's sentence for armed robbery is amended to reflect that it is to be served at hard labor, and it is affirmed as amended. Additionally, the trial court is directed to correctly inform Defendant of the provisions of La.Code Crim.P. art. 930.8 at resentencing.

**AFFIRMED IN PART, AMENDED IN PART, VACATED IN PART, AND REMANDED.**