479 So.2d 598 (1985)
STATE of Louisiana
v.
Noble MARSHALL.
No. KA 85 0363.
Court of Appeal of Louisiana, First Circuit.
November 19, 1985.
*600 William Quin, Asst. Dist. Atty., Amite, for plaintiff-appellee.
Thomas Foley, Asst. Public Defender, Amite, for defendant-appellant.
Before LOTTINGER, COLE and CRAIN, JJ.
COLE, Judge.
Defendant, Noble Marshall, was charged by bill of information with armed robbery, a violation of La.R.S. 14:64 and attempted aggravated rape, a violation of La.R.S. 14:27 and La.R.S. 14:42. He pled not guilty to those charges and waived his right to a jury trial. The court found him guilty of armed robbery and sentenced him to serve thirty years with the Department of Corrections. He was acquitted on the charge of attempted aggravated rape.[1]
From his conviction, defendant appeals urging five assignments of error:
1. The trial court erred by admitting a sketch of the alleged perpetrator into evidence without laying the proper foundation.
2. The trial court erred by failing to grant a mistrial because of prejudicial testimony which referred to defendant's involvement in another crime.
3. The trial court erred by denying defendant's motion for a continuance to permit alibi witnesses to appear on his behalf at trial, which prevented a full hearing of his alibies and defenses.
4. The trial court erred by denying the amendment of defendant's plea to include a plea of not guilty by reason of insanity.
5. The verdict was contrary to the law and evidence.[2]

FACTS
On August 6, 1984, at about 12:10 p.m., Sue Patton, the office manager of Drs. Randy and Rusty Meyer, was alone at the doctors' office in Hammond, Louisiana. Ms. Patton was working at her desk in an area which is separated by a wall from the waiting room. The wall includes a window, which can be opened to allow patients in the waiting room to speak with Ms. Patton. A man slid the window open and asked: "When will the doc be back[?]" She told him the doctor would be back in a few minutes and she could schedule him an appointment for 1:00 p.m., if he needed to see the doctor. She asked his name, and he answered: "robber." Although he did not say his name was Robert, she thought he did and was writing the name "Robert" on the appointment schedule when he "brought up a knife" in his hand, which he held in front of her face. The knife was a large hunting or kitchen knife. While leaning through the window he grabbed Ms. Patton on the arm. Pointing down to where the petty cash was kept he told her he wanted all the money. She told him he could have all the money, but he would not let go of her arm. She gave him the money. He took it with the hand that held the knife. He then let go of her arm and grabbed her breast with his left hand, and told her to take off her clothes. She struggled, during the course of which he completely ripped off her blouse. With him holding the blouse in his hand, she ran out the back door to another doctor's office next door. As she entered that office she locked the door and asked the receptionist, Angela Lee Shockley, to call the police. Ms. Shockley gave her a vest so she would not be exposed when the police arrived.
*601 The robber took $80 from Ms. Patton. As a result of the incident, she also sustained bruises under her arm where he held her and from the struggle in getting away from him.
The robber had Ms. Patton in his grasp for two to three minutes. The entire time she looked at his face. He had on half-mirrored sunglasses, allowing her to see part of his eyes, but she kept looking at his face. She testified: "I kept looking at his face, because at that time I told myself, I have to remember what you look like, I've got to remember what you look like and I kept looking at his face...."
On the day of the incident, Lionell Sibley, a detective with the Hammond Police Department, conducted an investigation. Ms. Patton gave him a description of the robber as having been a clean shaven black male, about 18 to 22 years of age, approximately six feet tall with curly hair styled in a medium afro haircut, wearing a light blue t-shirt and blue jeans.
On the day of the incident Ms. Patton viewed some photographs at the police department, but did not see any resembling the robber. She went home and told her husband what had happened. Under her direction, he prepared a sketch of the robber. The sketch was introduced in evidence at trial.
On the day after the incident, Officer Sibley presented Ms. Patton a photographic display of four black men. From the display, she selected the defendant as the robber. She testified she knew he was the man when she saw the picture. She also made a positive in-court identification of defendant.
Officer Sibley testified he saw defendant in Hammond on Washington Avenue across from a night club called the Chicken Shack at about 3:00 p.m. on the day of the incident. Kim Barker, an investigator with the Hammond Police Department, who participated in the investigation of the incident, testified he saw defendant at about 1:10 p.m. on the day of the incident standing on the corner of Washington Avenue and Newman Street.
The defendant took the stand in his own defense. He testified that prior to his arrest on August 7, 1984, in Hammond, he had been residing in Baton Rouge on Capital Boulevard from about August 3rd through August 7th. Carl Watts and Alvin Sims were with him at the time.
At trial, the defendant's alibi witnesses, Messrs. Watts and Sims, were apparently unavailable. The state stipulated if they were called to testify, their testimony would reflect they were with defendant at 708 South Capital Boulevard, Apartment 3, Baton Rouge, from August 3 to 7, 1984. However, the state did not stipulate to the veracity of their testimony.
Defendant testified he returned to Hammond on August 7, 1984, the day of his arrest. He testified the arresting officers, Sibley and Raacke, hate him passionately, and the officers were mistaken in giving testimony that he was in Hammond on the afternoon of the incident. He denied ever having seen Ms. Patton before the trial, and stated he had no knowledge of the incident.

ASSIGNMENT OF ERROR NO. 5
By means of this assignment, defendant argues the evidence was insufficient to convict him of armed robbery.[3] He contends only Ms. Patton identified him as the perpetrator of the crime, and she indicated the perpetrator was wearing sunglasses. Defendant concludes Ms. Patton's identification did not meet the test enunciated in State v. Price, 325 So.2d 780 (La. 1975) on rehearing; State v. Fortenberry, 307 So.2d 296 (La.1975); and State v. Newman, 283 So.2d 756 (La.1973), and her testimony did not clearly establish a valid identification of defendant. Defendant also asserts *602 the evidence is insufficient because the state did not admit a weapon into evidence.
The standard for reviewing sufficiency of evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude the essential elements of the crime were proven beyond a reasonable doubt. La.Code Crim.P. art. 821; State v. Day, 468 So.2d 1336 (La.App. 1st Cir.1985).
Price, Fortenberry, and Newman each involved the issue of whether or not a witness's in-court identification of a defendant had an independent basis from a possibly tainted out-of-court identification. Herein, defendant does not specifically allege Ms. Patton's out-of-court identification of him through the photographic lineup was in any way tainted. To the contrary, the record shows clearly it was not. Even assuming the photographic lineup was in some way tainted, we conclude Ms. Patton's in-court identification rests upon an independent basis.
In Price, Fortenberry and Newman the Louisiana Supreme Court set forth a test consisting of three factors to be considered to determine whether a witness' in-court identification was based on an independent source. These are: (1) the prior acquaintance of the witness with the accused; (2) the length of time the witness observed the perpetrator before, during and after the offense; and (3) the circumstances in which the observation was made; including illumination at the scene, the physical capacities of the witness and the emotional state of the witness at the time of the observation.
The above factors, considered in relation to the identification of defendant herein, are adequately satisfied. Although Ms. Patton had no prior acquaintance with defendant, the incident took place inside a well-lighted office. Ms. Patton was in the grasp of the robber for two to three minutes. She looked at his face the entire time. Although he was wearing half-mirrored sunglasses she was still able to see part of his eyes. Her testimony shows at the time of the incident she had the presence of mind to make a conscious effort to concentrate her attention on the man's face in order to remember what he looked like. She gave a detailed description of the robber, including his clothing, to Officer Sibley and described the robber to her husband, enabling him to prepare a sketch of the robber. See State v. Robertson, 454 So.2d 205 (La.App. 1st Cir.1984), writ denied, 458 So.2d 487 (La.1984).
On the day following the incident, she viewed a photographic lineup and selected a picture of defendant, thereby identifying him as the perpetrator of the armed robbery. When she saw the picture, she "knew" he was the man. Additionally, her in-court identification was positive and unequivocal.
In State v. Long, 408 So.2d 1221 (La. 1982), defendant's guilt was based entirely upon identification testimony, and the state presented no additional evidence. In regard to the standard to be used in determining if there was sufficient evidence to convict, the Louisiana Supreme Court stated: "Thus, under the Jackson rationale, it appears that the state was required to negate any reasonable probability of misidentification in order to carry its burden of proof." (at p. 1227.)
Where the key issue is not whether the crimes have been committed, but whether the defendant was the person who committed them, the Supreme Court has continued to employ the Long standard. State v. Smith, 430 So.2d 31 (La.1983). This Court applied the same standard in State v. Williams, 458 So.2d 1315 (La.App. 1st Cir. 1984), writ denied, 463 So.2d 1317 (La. 1985).
After reviewing the record, we conclude the state carried its burden of proof as stated in Long, supra, by negating any reasonable probability of misidentification of defendant as the person who committed the armed robbery of Ms. Patton.
It is true the state did not introduce the weapon in evidence at trial. The *603 state need not introduce the dangerous weapon used during the commission of an armed robbery. The victim's testimony can sufficiently establish a robbery was committed with a dangerous weapon. See State v. Rash, 444 So.2d 1204 (La. 1984); State v. Sterling, 453 So.2d 625 (La.App. 1st Cir.1984). The testimony of Ms. Patton, the victim, sufficiently establishes defendant used a large knife, described as either a hunting knife or a kitchen knife, which he held in front of her face and which he continued to hold throughout the incident. The knife clearly constituted a dangerous weapon. La.R.S. 14:2(3).
The testimony of the victim is sufficient to establish the elements of an offense. State v. Johnson, 461 So.2d 1273 (La.App. 1st Cir.1984). The trial court's verdict establishes he accepted Ms. Patton's testimony and that of Officers Sibley and Barker as more credible than that of defendant and the stipulated testimony of defendant's alibi witnesses, Messrs. Watts and Sims. In State v. Mullins, 464 So.2d 459, 463 (La.App. 1st Cir.1985) this Court stated the following:
"Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, this is a matter of the weight of the evidence, not its sufficiency. Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982); State v. Kent, 434 So.2d 1258 (La.App. 1st Cir.1983), writ denied, 440 So.2d 727 (La.1983). A determination of the weight of the evidence is a question of fact. Korman, 439 So.2d [1099] at 1101. This court has no appellate jurisdiction to review questions of fact in criminal cases. La.Const. of 1974, art. V, § 10(B). This court is constitutionally precluded from acting as `thirteenth juror' in assessing what weight to give evidence in criminal casesthat determination rests solely on the sound discretion of the trier of fact. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Williams, 452 So.2d 234 (La.App. 1st Cir. 1984), writ not considered, 456 So.2d 161 (La.1984), reconsideration not considered, 458 So.2d 471 (La.1984)."
The evidence of record is sufficient to support the trial court's verdict.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2
By means of this assignment, defendant contends the trial court erred by failing to grant a mistrial because of prejudicial testimony which referred to defendant's involvement in another crime.
The alleged prejudicial testimony occurred during cross-examination of Officer Sibley by defense counsel, resulting in the following colloquy:
"Q. How long have you known [defendant]? I'm not saying how you know him, but how long have you known him?
A. Since the burglary of Moran Motors.
MR. FOLEY [defense counsel]: Your Honor, I am trying specifically to keep it to how long and I think that I have to move for a mistrial as it is raising other issues here. This is not my purpose. I'm simply trying to conclude how he identified him on August the 6th as being that one in the same person.
MR. QUINN [assistant district attorney]: That's how he identified him. He asked the question and he answered the question. There was no effort to ask the question in any other way than the manner in which he was asked the question. I would ask the Court to not allow any reference to Moran Motors to have any influence whatsoever, and I would further ask the Court to request the Officer to not make any reference to any previous problems that this defendant might have had with the law. But, as regarding his answer to the question, the question was answered as it was asked.
THE COURT: The motion for mistrial is denied.
BY THE COURT: Detective Sibley, please don't refer to any other crimes or *604 any other arrest, or anything of that nature with regard to this accused.
MR. FOLEY: For the record, we would move for assignment of error for our objection.
THE COURT: All right."
Defendant argues Officer Sibley's reference to the burglary of Moran Motors was reference to another crime committed or alleged to have been committed by defendant as to which evidence is not admissible. This reference according to La.Code Crim.P. art. 770(2) would constitute valid grounds for a mistrial.
La.Code Crim.P. art. 770(2) mandates a mistrial upon motion of the defendant when a remark or comment made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible.
A police officer's unsolicited, unresponsive reference to another crime alleged to have been committed by a defendant is not the comment of a court official under art. 770(2), but such an officer will be held to the same standard if his answers show a pattern of unresponsiveness or improper intent. State v. Nuccio, 454 So.2d 93 (La.1984). However, the state cannot be charged with testimony elicited by defense counsel implying that defendant had previously committed other crimes, and defendant cannot claim reversible error on the basis of that evidence which he elicited. State v. Tribbet, 415 So.2d 182 (La.1982); State v. Kimble, 375 So.2d 924 (La.1979).
Articles 770 and 771 of the Louisiana Code of Criminal Procedure are designed to guard against improprieties in the presence of the jury. These articles do not mandate a mistrial in a bench trial when a prohibited question is propounded. State v. Marshall, 359 So.2d 78 (La.1978).
The single reference by Officer Sibley to the "burglary of Moran Motors" did not prejudice the trial court. Following defense counsel's objection to the reference which occurred on defense counsel's cross-examination of Officer Sibley, in response to defense counsel's own question, the trial court, in accordance with the state's request, admonished the officer to refrain from any reference to any other crime or arrest. Under these circumstances the trial court's ruling was correct.
This assignment is without merit.

PATENT SENTENCING ERROR
Defendant was sentenced to serve thirty years with the Department of Corrections.[4] The penalty for armed robbery is a mandatory one of imprisonment "... at hard labor for not less than five years and for not more than ninety-nine years, without benefit of parole, probation or suspension of sentence." La.R.S. 14:64 B. Because the district court did not specify the sentence be served "without benefit of parole, probation or suspension of sentence"; the sentence is illegal. Imposition of sentence is the function of the trial court and because sentencing discretion is involved in the correction of the sentence, it should be vacated and remanded to the trial court for resentencing. State v. Fraser, 471 So.2d 769 (La.App. 1st Cir.1985).
CONVICTION AFFIRMED; SENTENCE VACATED AND REMANDED FOR RESENTENCING.
NOTES
[1] The record is devoid of evidence the trial court waited the required twenty-four hours after defendant's motion for new trial was denied before imposing sentence. (La.Code Crim.P. art. 873). Nor does the record indicate defendant waived that waiting period. Defendant does not argue or in any way show he was actually prejudiced by the failure of the trial court to observe the waiting period. Such failure on the part of the trial court is harmless error where defendant does not show actual prejudice. See State v. Mason, 447 So.2d 1134 (La.App. 1st Cir.1984).
[2] Assignments of error one, three and four were not briefed on appeal and are therefore considered abandoned. Uniform RulesCourts of Appeal, Rule 2-12.4.
[3] Defendant filed a motion for new trial on January 15, 1985, asserting the verdict was contrary to the law and the evidence, which was denied by the trial court. The proper method to raise the issue of insufficient evidence is by motion for post verdict judgment of acquittal under La.Code Crim.P. art. 821. State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983).
[4] The record does not include a sentencing transcript. However, the sentence actually imposed presumably is accurately reflected by the appropriate minute entry, dated January 16, 1985, which states that the "Court sentenced the defendant to the Department of Corrections for 30 years under Article 894.1."