666 So.2d 427 (1995)
STATE of Louisiana in the Interest of R.L.K., Jr.
No. 95 KJ 1277.
Court of Appeal of Louisiana, First Circuit.
December 19, 1995.
Writ Denied January 26, 1996.
*428 Walter Reed, Franklinton, William R. Campbell, Jr., New Orleans, for Plaintiff-Appellee, State.
James Looney, Franklinton, for Defendant-Appellant, Richard Lee King, Jr.
*429 Before CARTER, PITCHER, JJ., and CRAIN[1], J. Pro Tem.
CRAIN, Judge Pro Tem.
The State filed a petition alleging that R.L.K., Jr., a fifteen year old child, should be adjudicated delinquent and/or in need of supervision based upon the commission of theft of livestock, in violation of LSA-R.S. 14:67.1.[2] After an adjudication hearing, the trial court found that R.L.K., Jr. had committed the offense as charged. He was adjudicated a delinquent and committed to the custody of the Florida Parishes Detention Center for three months. The trial court also ordered that R.L.K., Jr. be placed on probation for two years with the special condition that his mother pay $1,125.00 in restitution to the victim. R.L.K., Jr. has appealed, alleging two assignments of error, as follows:
1. The evidence was insufficient to support the instant adjudication.
2. The trial court erred in imposing an improper disposition.

FACTS
On December 26, 1993, R.L.K., Jr. and a co-perpetrator, Floyd Hulin, Jr. (hereinafter referred to as "Hulin"),[3] committed theft of a domesticated deer. The following facts were revealed at the adjudication hearing. In December of 1993, the victim, Lila Knight, owned three pet deer which were kept in a pen at her residence located on La. Hwy. 16 in Enon, Louisiana. On December 26, 1993, the victim and her husband discovered that someone had killed two of the deer sometime between 12:30 a.m. and 7:00 a.m. A doe named Daisy was alive and still inside the pen. A two and one-half year old buck named Lightning had been shot and killed, but it was inside the pen. The other deer, a three and one-half year old, ten or eleven point buck named Rusty, was missing. The victim and her husband observed a large hole in the pen and two sets of human footprints leading from the hole in the pen to a spot on the far side of a nearby bridge, where they discovered some tire marks. The victim surmised that Rusty had been killed and dragged from the pen, through a creek, and up the other side of the bridge before being loaded onto a truck parked on the bridge.
Several State witnesses observed Hulin's two-tone GMC pickup truck parked on the side of the road near the victim's residence on the morning of the incident. Other witnesses testified that, at various times during the day on December 26, Hulin and R.L.K., Jr. were driving around showing people a nice ten or eleven point buck which Hulin had killed that day. The testimony of Hollis Stogner established that R.L.K., Jr. and Hulin were hunting together that morning. Stogner observed State Exhibit 1, a picture of Rusty, the ten or eleven point buck missing from the victim's deer pen, and stated that it closely resembled the deer which Hulin killed on December 26. Stogner indicated that the deer Hulin and R.L.K., Jr. showed to him had a single gunshot wound to the neck and had been killed with a rifle.
R.L.K., Jr. presented an alibi defense at the adjudication hearing. Although neither R.L.K., Jr. nor Hulin testified, R.L.K., Jr.'s mother, sister, and the sister's boyfriend all testified that R.L.K., Jr. was at home all night and until 9:30 a.m. on December 26. Although the sister and her boyfriend left at approximately 9:30 to 10:00 a.m. that morning, R.L.K., Jr.'s mother indicated that *430 R.L.K., Jr. was with her all day on December 26. Additionally, Hulin's father, Floyd Hulin, Sr., testified that, although he took the two tone GMC pickup truck and killed a spike deer on the morning of December 26, his son (Hulin) stayed at home in bed that morning.
However, on rebuttal Lt. Donald Sharp of the St. Tammany Parish Sheriff's Office testified that Floyd Hulin, Sr., made conflicting statements during the investigation of this incident. He first indicated that his son (Hulin) and R.L.K., Jr. were together at his residence on December 25 and 26 and that they did not go anywhere. Yet, he subsequently admitted that at approximately 9:00 or 10:00 a.m. on December 26, his son (Hulin) did go to pick up a meat grinder from Joe Hulin because they had killed some hogs.

ASSIGNMENT OF ERROR NO. ONE:
In this assignment of error, R.L.K., Jr. contends that the trial court erred in adjudicating him a delinquent based upon a finding that he had committed theft of livestock.
When the State charges a child with a delinquent act, it has the burden of proving each element of the offense beyond a reasonable doubt. On appeal, the applicable standard of review is whether or not, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This standard of review applies to juvenile proceedings in which a child is adjudicated a delinquent. See La.Ch.C. art. 883; State in the Interest of Giangrosso, 395 So.2d 709, 714 (La.1981).
LSA-R.S. 14:67.1 provides, in pertinent part:
A. Theft of livestock is the misappropriation or taking of livestock belonging to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of the livestock is essential. It shall not be necessary to prove defendants killed the animal; the mere taking of meat from the animal shall constitute theft hereunder. Transportation of livestock to a slaughterhouse or an auction sale barn and assignment in a record book in a name other than that of the owner shall also be theft of livestock. An intent to deprive the owner permanently of funds derived from sale is essential.
B. "Livestock" means any animal, hybrid, mixture, or mutation of the species of horses, mules, donkeys, asses, cattle, swine, sheep, goats, domesticated deer, buffalo, bison, beefalo, or oxen.
As the trier of fact, the court was free to accept or reject, in whole or in part, the testimony of any witness. State v. Marshall, 479 So.2d 598, 603 (La.App. 1st Cir. 1985). Furthermore, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Marshall, 479 So.2d at 603. In finding that R.L.K., Jr. committed theft of livestock, which was the basis for his adjudication as a delinquent, the trial court obviously accepted the testimony of the State's witnesses and rejected the alibi testimony of R.L.K., Jr.'s relatives. On appeal, this Court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. State v. Creel, 540 So.2d 511, 514 (La.App. 1st Cir.), writ denied, 546 So.2d 169 (La. 1989).
In his brief to this Court, R.L.K, Jr. does not contest the fact that someone committed the offense of theft of livestock. Instead, he argues that the evidence was entirely circumstantial and that it failed to exclude every reasonable hypothesis of innocence. R.L.K., Jr. states:
There is no dispute that Mrs. Knight lost two of her pet deer in the early morning hours. There is also no doubt that the trial court did not credit any of the defense testimony. Of course, that is the right of the trier of fact and is not in dispute. However, the trial court appears to have applied the wrong standard. When it did not believe the defense witnesses, the court seems to have concluded that the evidence of the presence of the juvenile *431 with Hulin the next day was sufficient to overcome the presumption of innocence. But the evidence falls short of proof beyond a reasonable doubt. At best, the evidence raises an inference of guilt, but that is not enough to sustain the conviction.
Viewed in the light most favorable to the State, as it must, the evidence shows no more than the juvenile was in the company of Hulin the next day. There was no direct evidence that either of those accused killed or took the deer. No one saw the crime.
Thereafter, R.L.K., Jr. concludes:
The State may have shown that this juvenile was an accessory after the fact of the theft, if he knew that the deer was improperly killed and continued to travel throughout the area, helping Hulin show off the "prize." It is doubted that this would actually constitute being an accessory under the definition of R.S. 14:25, but if so, this is not a responsive verdict to the theft charge. Likewise, these facts might show possession of stolen property, if the juvenile can fairly be said to have been in possession rather than just with Hulin while Hulin possessed the deer. But R.S. 14:69 is not responsive to the charged crime. Cf. C.Cr.P., Arts. 814-815.
Simply put, there was insufficient evidence to prove that this juvenile killed the deer or otherwise took it. The conviction should be reversed for insufficient evidence to show that the juvenile was the person who took the deer.
We disagree.
When analyzing circumstantial evidence, LSA-R.S. 15:438 provides that the fact finder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. State v. McLean, 525 So.2d 1251, 1255 (La.App. 1st Cir.), writ denied, 532 So.2d 130 (La.1988). However, when a case involves circumstantial evidence, and the trier of fact reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. State v. Volquardts, 540 So.2d 497, 501 (La.App. 1st Cir.), writ denied, 544 So.2d 398 (La.1989); State v. Moten, 510 So.2d 55, 61 (La.App. 1st Cir.), writ denied, 514 So.2d 126 (La.1987).
Contrary to R.L.K., Jr.'s assertion in brief, we find that, once the trial court rejected the alibi testimony of the child's relatives, it did not apply the wrong standard. The testimony of several State witnesses established that Hulin's truck was seen parked beside the road near the victim's residence on the morning of this offense. The testimony of Hollis Stogner established that Hulin and R.L.K., Jr. hunted together that morning. Several State witnesses testified that later that day R.L.K., Jr. and Hulin were showing off a deer which Hulin claimed to have killed that morning. Under these circumstances, once the alibi defense was rejected, and it was accepted that Hulin and R.L.K., Jr. hunted together that morning, the only remaining hypothesis of innocence was that Hulin killed the deer himself, without any help from R.L.K., Jr. Yet, the victim's testimony established that there were two sets of human footprints leading from the hole in the deer pen to the spot on top of the bridge where the deer was loaded into a vehicle. Therefore, we find that the evidence, although circumstantial, was sufficient to exclude every reasonable hypothesis of R.L.K., Jr.'s innocence.
After a careful review of the record, we find that the evidence supports the trial court's determination. We are convinced that a rational trier of fact, viewing all of the evidence as favorable to the prosecution as any rational fact finder can, could have concluded that the State proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that R.L.K., Jr. was a principal[4] involved in the offense of theft of livestock. Therefore, the *432 trial court did not err in adjudicating him to be a delinquent.
This assignment of error is meritless.

ASSIGNMENT OF ERROR NO. TWO:
In this assignment of error, R.L.K., Jr. contends that the trial court erred in imposing an improper disposition. Specifically, he notes that the record does not indicate consideration of the disposition guidelines in La.Ch.C. art. 901 prior to the imposition of the disposition. He further notes that, in ordering restitution as a condition of probation, the trial court erred by ordering his mother to pay restitution to the victim. Finally, he notes that the trial court apparently imposed a restitution amount for the replacement of both deer (when only one deer was listed in the petition) and that the trial court did not consider facts such as the ability to pay the amount of restitution ordered or the possibility that the victim had been reimbursed through insurance or through a restitution order against Hulin. Because we agree with these observations by R.L.K., Jr. and we note additional problems in the disposition, we must vacate the instant disposition and remand this matter to the trial court for imposition of a new disposition.
Although the trial court ordered a predisposition investigation (see La.Ch.C. art. 890), the report of this investigation to the trial court apparently was made orally, rather than in writing. The record does not contain a copy of a written predisposition investigation report. The trial court stated that it found "a serious breakdown in [R.L.K., Jr.'s] family life." However, there is no information in the instant record regarding R.L.K., Jr.'s social background, home environment, or education. The only information regarding his prior juvenile record is a reference to "his prior record of probation supervision in St. Tammany Parish" for an unspecified reason.
The instant disposition was imposed on September 22, 1994. The record does not contain a written judgment of disposition. See La.Ch.C. art. 903B. While there is a detention order and a probation order, both of which are dated September 22, 1994, they contain information conflicting with each other and with the minutes and the transcript. The detention order indicates that R.L.K., Jr. was "to be held in the Florida Parishes Detention Center until further orders of the Court." However, the minutes and the transcript indicate that this commitment was for a period of three months. The probation order does not mention the Florida Parishes Detention Center commitment. Instead, it indicates that R.L.K., Jr. was placed on supervised probation "for a period of time not to exceed 2 years" and indicates he would reside with his mother "until further orders of this Court." Although the trial court ordered the payment of restitution apparently as a special condition of probation, the space on the written probation order for restitution is blank.
We further note an apparent error in the disposition. While the trial court imposed a commitment of three months in the Florida Parishes Detention Center, it did not suspend all, or any part of, this commitment. Yet, the trial court placed R.L.K., Jr. on supervised probation for two years. Apparently, the trial court meant to suspend all or part of the three months commitment, otherwise the probation would be meaningless as a violation thereof would not result in any sanction. On the other hand, it is possible that the trial court meant to impose a separate commitment and that the three month commitment to the Florida Parishes Detention Center was imposed as a special condition of probation.
Accordingly, the trial court shall conduct a new disposition hearing in compliance with La.Ch.C. arts. 892 and 893. Prior to the imposition of a new disposition, the trial court shall consider La.Ch.C. art. 901 and shall comply with La.Ch.C. art. 903A by stating for the record the considerations taken into account and the factual basis therefor in imposing the particular disposition. The trial court shall give R.L.K., Jr. credit for time served in secure detention, if any, prior to the imposition of a new disposition. See La.Ch.C. art. 898A. If restitution is ordered as a special condition of probation, only R.L.K., Jr. may be ordered to pay restitution. The trial court should determine the restitution amount based upon only the one *433 deer listed in the petition, after first considering whether or not the victim otherwise has been compensated for the loss and considering the child's ability to pay any amount ordered. See State v. Spell, 449 So.2d 524, 526 (La.App. 1st Cir.1984); State in the Interest of D.M.G., 579 So.2d 525, 528 (La.App. 4th Cir.1991). Finally, the trial court shall enter into the record a written judgment of disposition pursuant to La.Ch.C. art. 903B.
ADJUDICATION AFFIRMED. DISPOSITION VACATED. REMANDED WITH INSTRUCTIONS.
PITCHER, J., dissents and assigns reasons.
PITCHER, Judge, dissenting.
I respectfully dissent. By affirming the trial court's decision, the majority disregards the fact that the trial judge's disbelief of the defendant's [alibi defense] does not necessarily mean the state has met its burden of proof. See State v. Chapman, 625 So.2d 1347 (La.App. 3rd Cir.), writ denied, 629 So.2d 1180 (La.1993). "Ultimately, all evidence, direct and circumstantial must be sufficient under Jackson[1] to satisfy a rational trier of fact that the defendant is guilty beyond a reasonable doubt. Due process requires no greater burden". State v. Porretto, 468 So.2d 1142, 1146 (La.1985).
Contrary to the majority's findings, the evidence only established that a truck similar to the truck owned by Hulin's parents was seen parked beside the road near the victim's residence on the morning of this offense. Although Hollis Stogner (Mr. Stogner) stated that Hulin told him that Hulin and R.L.K., Jr. hunted together on the morning of the incident, Mr. Stogner testified that he was uncertain as to whether the juvenile (R.L.K., Jr.) at trial was the same person who came to the trailer on December 26. Mr. Stogner also testified that after looking at State Exhibit 1, the picture of Rusty, he was not sure if the deer shown to him by Hulin and R.L.K., Jr. was the same deer. Additionally, in finding sufficient evidence to support R.L.K., Jr.'s involvement in the theft, the trial court as well as the majority relied upon the testimony of the victim that she saw two sets of human footprints at the crime scene. However, no evidence was presented showing that one of the sets of human footprints belonged to R.L.K., Jr.
Based upon this evidence, we should reverse the judgment of the trial court. Although the trial court failed to believe R.L.K., Jr.'s alibi testimony, the state's evidence was still insufficient to prove that R.L.K., Jr. committed the crime of theft. Even if we assume, arguendo, that Hulin stole the deer, none of the evidence that was presented lends itself to support a conviction of theft against R.L.K., Jr. If anything, the evidence tends only to establish that R.L.K., Jr. was with Hulin at some point after the theft had occurred. By affirming this conviction of theft, on the circumstantial evidence presented at this adjudication hearing, the majority makes evidentiary jumps beyond the bounds of due process.
NOTES
[1] Judge Hillary J. Crain, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] The instant petition was based on the theft of a particular domesticated deer, a ten point buck, alleged to be of a value greater than $500. However, unlike LSA-R.S. 14:67B, wherein the applicable penalty provision is determined by the value of the item(s) taken, LSA-R.S. 14:67.1C contains a single penalty provision for all livestock thefts, regardless of the value of the animal(s) taken. Therefore, this allegation in the petition regarding a value greater than $500 is regarded as mere surplusage. See La.Ch.C. arts. 104(1) & 803; La.C.Cr.P. art. 486; State v. Jones, 347 So.2d 200, 201-202 (La. 1977). See also La.Ch.C. arts. 844D & 845B.
[3] At one point during the instant adjudication hearing, the prosecutor referred to Hulin as "the adult codefendant" and seemed to indicate that separate, adult criminal proceedings were pending against him. However, the instant record does not contain any further information regarding the status of criminal proceedings against Hulin.
[4] LSA-R.S. 14:24 provides:

All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
[1] An appellate court in Louisiana, reviewing the sufficiency of the evidence to support a conviction, is controlled by the standard enunciated by the Supreme Court of the United States in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under that standard, the appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt.

State v. Jacobs, 504 So.2d 817, 820 (La.1987).