| yFOGG, Judge.
In this juvenile delinquency proceeding, J.S. was charged with the offense of terrorizing, a violation of LSA-R.S. 14:40.1. After an adjudication hearing, the court adjudicated J.S. a delinquent. The court immediately held a disposition hearing, sentenced J.S. to two years in the custody *461 of the Department of Corrections, suspended the sentence, and placed J.S. on two years probation. J.S. appeals.
On May 19, 1999, a student at Madison-ville Junior High School discovered a symbol and writing on the wall of a seventh and eighth grade boy’s bathroom that read, “Everyone will die May 28,1999. Be Ready.” The writing was on one wall and approximately two to three feet high. Ms. Debra Rushing, the school principal, testified that, after the student reported the writing to her office around 2:15 or 2:30 p.m., she immediately went to the bathroom. When she arrived at the bathroom, the school’s security guard, a Madisonville policeman, was standing outside. He and the custodian, who was inside, had also been informed. After looking at the writing, Ms. Rushing had the door to the bathroom locked, returned to her office and contacted the school board office. That afternoon Madisonville Police Chief Charles H. Biggers arrived at the school to conduct an investigation. After he looked at the bathroom wall, Ms. Rushing locked the door again.
Ms. Rushing and Chief Biggers reviewed hall passes, compared the handwriting on the wall with ¡some of. the students’ written school work, and questioned students. On the same day, Ms. Rushing gathered the teachers together to explain what had happened and why the bathroom was locked.
Chief Biggers contacted Detective Mike Dupre of the St. Tammany Parish Sheriffs Office, who was trained in handwriting analysis, to help in the investigation. After Dupre reviewed |3the handwriting samples and school work of several students and compared those with the writing, he advised Chief Biggers that he was 90% certain that J.S. wrote the words. On May 21, J.S. was arrested at the school. Subsequently, it was determined that another student, J.K., was involved, and he was also arrested.
The dispositive issue herein is whether the state proved that the writing caused “any person to be in sustained fear for his or another person’s safety” or caused “other serious disruption to the public,” as-required by LSA-R.S. 14:40.1. For the reasons below, we find that the state failed to prove this required element of the crime of terrorizing.
When the state charges a child with a delinquent act, it has the burden of proving each element of the offense beyond a reasonable doubt. On appeal, the applicable standard of review is whether or not, after, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State in the Interest of R.L.K., 95-1277 (La.App. 1 Cir. 12/19/95), 666 So.2d 427, writ denied, 95-3120 (La. 1/26/96), 666 So.2d 1084. This standard of review applies to juvenile proceedings in which a child is adjudicated a delinquent. See LSA-Ch.C. art. 883; Interest of R.L.K., 666 So.2d at 430. However, in juvenile proceedings, the scope of review of this court extends to both law and facts. LSA-Const. art. V, § 10B; See State in the Interest of Batiste, 367 So.2d 784 (La.1979); In the Interest of L.C., 96-2511 (La.App. 1 Cir. 6/20/97), 696 So.2d 668.
The Jackson v■ Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), standard of review incorporated in LSA-|4C.Cr.P. art. 821[1] is an objective standard for testing the overall evidence, both direct *462 and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, LSA-R.S. 15:438 provides that the fact finder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. State v. McLean, 525 So.2d 1251 (La.App. 1 Cir.), writ denied, 532 So.2d 130 (La.1988).
The crime of terrorizing is defined in LSA-R.S. 14:40.1(A) as follows:
Terrorizing is the intentional communication of information, known by the offender to be false, that the commission of a crime of violence is imminent or in progress or that a circumstance dangerous to human life exists or is about to exist, thereby causing any person to be in sustained fear for his or another person’s safety; causing evacuation of a building, a public structure, or a facility of transportation; or causing other serious disruption to the public.
The offense of terrorizing requires (a) false information intentionally communicated and (b) an immediacy element concerning the false information or threat that causes sustained fear or serious public disruption.
We find only one reported Louisiana case dealing with the crime of terrorizing. In State, In the Interest of R.T., 33,246 (La.App. 2 Cir. 12/23/99), 748 So.2d 1256,[2] a juvenile was charged with terrorizing, a violation of LSA-R.S. 14:40.1(A). R.T. was convicted of terrorizing based on two conversations with other students. In Interest of R.T., 748 So.2d at 1262, the court found that the state had not proven beyond a ^reasonable doubt that the first conversation was received as a threat by R.T.’s fellow student. As to the second conversation, the court found that under the “immediacy element” of the crime of terrorizing, the state must show the person to whom the statement is communicated perceived that the threatened false crime is “in progress” or “about to exist.” Interest of R.T., 748 So.2d at 1262-1263. With respect to this second conversation, the second circuit concluded that the state did not prove this element beyond a reasonable doubt. The court explained that the student’s description of R.T.’s statements about the security of the biology class and other school functions was far from clear. The court expressed considerable doubt as to whether R.T. “was speaking purely hypothetically about inadequate security at the school, trying morbidly to impress a classmate who he assured would not be killed, or describing as a cold-blooded terrorist a plan which he actively desired to carry out.” Interest of R.T., 748 So.2d at 1263. The court concluded that it was clear from the student’s failure to express immediate fear, failure to stop attending biology class, failure to refuse to sit next to R.T., and failure to advise the teacher, principal, or her parents of the discussion, that the student did not believe R.T. was about to act. Interest of R.T., 748 So.2d at 1263.
In seeking to determine the meaning of the statutory phrases “sustained fear” and “serious disruption,” we turn to Webster’s II New College Dictionary (1995), which defines the words “sustain,” “fear,” “serious,” and “disrupt,” in part as follows:
Sustain: 1. To keep in existence: MAINTAIN .... 5. To endure or withstand .... 6. To experience or suffer
[[Image here]]
*463 Fear: l.a. Alarm and agitation caused by the expectation or realization of danger. b. An instance of this.
| ^Serious: 1. Grave in quality, character or manner .... 2. Said or done earnestly .... 5. Causing worry.
Disrupt: 1. To throw into disorder or confusion. 2. To interrupt ....
Thus, we find the phrase “sustained fear” means alarm or agitation of danger that is maintained or kept in existence and “serious disruption” means disorder or confusion that is grave, earnest or causes worry.
The state asserts that the principal’s actions, in immediately locking the bathroom door, calling the school board, and cooperating with the police constitute a swift reaction to the threat and indicate fear for the safety of all and of a disruption to the public if the perpetrator(s) were not found as soon as possible.
While the principal and the chief of police immediately began investigating, neither expressed any alarm or fear. When asked about “any unrest at the school,” Ms. Rushing explained that there was unrest due to her recent appointment as principal. She also testified that the staff was aware of a heightened degree of tension at the school and noted that the writing occurred approximately one month after the widely reported shootings at a Littleton, Colorado high school. However, it is unclear from her testimony whether the tension at Madisonville Junior High was caused by the writing or even whether it began before or after the writing was discovered.
Additionally, the record contains no testimony as to the teachers’ reactions after they learned of the writing. The record reflects simply that the writing caused a “big stir” in the school, and the students were temporarily detained after the dismissal bell on the day the writing occurred. Although news of the bathroom graffiti spread quickly among the students, no one testified that they were alarmed or fearful or that there |7was serious disruption, disorder or confusion after the writing was discovered.
After a careful review of the record, we find no evidence that the writing, even in the atmosphere created by the Colorado tragedy, caused any sustained fear or serious disruption. Therefore, a rational trier of fact, viewing all of the evidence as favorable to the prosecution as any rational fact finder can, could not have concluded that the state proved all the elements of the crime of terrorizing beyond a reasonable doubt and to the exclusion of every reasonable hypothesis of innocence. After undertaking our state’s constitutionally mandated review of the law and facts in this juvenile proceeding, we find reversible error by the trial court in adjudicating the child to be delinquent.
Considering the foregoing, we pretermit J.S.’s other arguments that there was insufficient evidence to prove his identity as the perpetrator of the crime and that the trial court erroneously accepted the state’s two witnesses as experts in the field of handwriting analysis.
For the foregoing reasons, we reverse J.S.’s adjudication of delinquency and vacate his disposition.
ADJUDICATION OF DELINQUENCY REVERSED; DISPOSITION VACATED.

. Pursuant to LSA-Ch.C. art. 104, "[w]here procedures are not provided in this Code, or otherwise by law, the court shall proceed in accordance with ... [t]he Code of Criminal Procedure, in a delinquency proceeding ....”

. The Louisiana Supreme Court has granted writs in this case and heard oral arguments of the parties. State, In the Interest of R.T., 2000-0205 (La. 10/27/00), 772 So.2d 111. To date, however, that court has not issued an opinion. Nevertheless, we believe that there is even less evidence in the instant case to support a finding of sustained fear or serious public disruption and the juvenile's adjudication as a delinquent.