PETERS, J.
This appeal arises from J. F.’s[1] adjudication as a delinquent for having committed the offense of forgery, which, if committed by an adult, would be a violation of La.R.S. 14:72. For the following reasons, we affirm the adjudication. However, we vacate in part the disposition and remand the matter to the trial court with instructions.
DISCUSSION OF THE RECORD
By a petition filed July 31, 2002, the State of Louisiana (state) charged J. F., a minor born March 7, 1986, with having committed the offense of forgery by writing and cashing checks totaling $530.00 on the MidSouth National Bank (bank) checking account of Roland J. Picard, II. The record describes the four checks at issue as follows:
Check Number 0551 in the amount of $160.00, undated, made payable to J. F., endorsed by J. F., and paid by the bank on February 11, 2002.
Check Number 0552 in the amount of $150.00, dated February 19, 2002, made payable to J. F., endorsed by J. F., and paid by the bank on February 20, 2002. Check Number 0553 in the amount of $90.00, dated February 22, 2002, made payable to J. F., endorsed by J. F., and paid by the bank on February 22, 2002. Check Number 0554 in the amount of $130.00, dated February 25, 2002, made payable to J. F., endorsed by both J. F. and another individual identified in the record only as “Andre,” and paid by the bank on February 26, 2002.
All four checks bear Mr. Picard’s purported signature as maker. However, the signatures are forgeries.
*1284 Mr. Picard testified at the August 21, 2002 adjudication hearing that he used the account upon which the checks were written sporadically and only in conjunction | ¡¿with rental property he owned. According to Mr. Picard, when the bank notified him that the four forged checks caused his account to be overdrawn, he had not personally written a check on the account for around three months. Although he had no direct knowledge concerning how the checks left his possession, he testified that he normally kept all the checks on a shelf in his bedroom, in plain view. He shared that home with his wife and stepson, Aaron James Adams (Aaron), was aware that Aaron and J. F. were acquainted, and was aware that J. F. had visited in his home on occasion.
Aaron, who was seventeen years old at the time of the adjudication hearing, testified that he became acquainted with J. F. through school and that J. F. had visited in his home on occasion, including in February of 2002. According to Aaron, his stepfather became aware that some checks were missing around the time of one of J. F.’s visits. However, he had no independent knowledge concerning how the checks were taken and did not see J. F. take them.
The February 26 bank transaction was recorded by the bank’s security camera. According to Lafayette City Police Detective Chastity Arwood,[2] she watched the surveillance video and observed J. F. and another male enter the bank, approach the teller, provide identification, and endorse the back of a check. Detective Arwood testified that when she interviewed J. F., he admitted writing and cashing all four checks. He explained to Detective Ar-wood that he did so for two friends who had since moved to Florida. According to Detective Arwood, J. F.’s mother identified the handwriting on the front of the checks as that of her son.
J. F. testified on his own behalf and admitted endorsing and cashing the four | ¡¡checks. However, he denied signing Mr. Picard’s name to the front of the checks and denied informing Detective Arwood that he had completed the front of the checks. Rather, J. F. asserted that he had cashed the checks at the request of two friends — -Brock, age twenty-one, and Caleb, age twenty. According to J. F., Brock and Caleb informed him that the checks, which were provided to him already filled out, were from their grandfather for work they had performed for him. They asked him to cash the checks only because they had no Louisiana identification documents.
J. F. testified that he cashed the checks on different days and that someone named Andre accompanied him on one day. While he had no difficulty cashing the other three checks with only his school identification document, the teller required that Andre show his driver’s license and endorse the check the day Andre accompanied him.
J. F.’s mother testified that she told Detective Arwood only that the signature on the back of the checks “could be” her son’s but that she made no comment to the detective concerning the writing on the front of the checks.
Immediately after completion of the evidence at the adjudication hearing, the trial court adjudicated J. F. as a delinquent for having committed the forgeries. A dispo-sitional hearing held October 30, 2002, resulted in the trial court imposing the following disposition:
*1285 I'm going to order that he be committed to the Department of Corrections for a period of one (1) year on the forgery count. I’m going to revoke his probation in Docket Number JC20020220. I’ll order that he serve his suspended sentence of six (6) months on the one (1) count of marijuana and six (6) months on the one (1) count of possession of drug paraphernalia. Each of these sentences are to run concurrent, with a referral to the STOP/LITE Program. Upon completion of the secure portion of the program, he is to be released to the custody — released from the Department of Corrections’ custody. Special condition is he is to — the parents are to pay restitution in the amount of five hundred thirty dollars ($530) to Mid[S]outh Bank. While in custody, the Court | ¿will recommend that any drug counseling programs that are available in those facilities be made available to him, as well as that he continue working and he complete a GED program.
J. F. has appealed, asserting three assignments of error.

Assignment of Error Number One

In his first assignment of error, J. F. argues that the trial court erred in admitting his statement to Detective Arwood without requiring the state to establish that it was voluntarily made. Detective Arwood testified that J. F. specifically told her he had endorsed the checks and that he had completed every blank on the checks.
J. F. did not object to Detective Ar-wood’s testimony concerning his statement, and the record contains no previously filed motion to suppress the statement. The Louisiana Children’s Code does not contain a provision regarding a juvenile’s failure to make a contemporaneous objection. However, “[wjhere procedures are not provided in [the Children’s] Code, or otherwise by law, the court shall proceed in accordance with ... [t]he Code of Criminal Procedure in a delinquency proceeding....” La.Ch.Code art. 104(1). Applying La.Ch.Code art. 104(1), we find that La.Code Crim.P. art. 841(A) provides:
An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.
Acknowledging that he did not object to the statement’s admissibility during Detective Arwood’s testimony, J. F. asserts on appeal that, even absent a contemporaneous objection, the state bears the burden of establishing the admissibility of the statements. In making this argument, J. F. relies on La. Code Crim.P. art. 703(D), which provides:
IsOn the trial of a motion to suppress filed under the provisions of this Article, the burden of proof is on the defendant to prove the ground of his motion, except that the state shall have the burden of proving the admissibility of a purported confession or statement by the defendant or of any evidence seized without a warrant.
We first note that La.Code Crim.P. art. 703 relates to the filing of a motion to suppress evidence. The Children’s Code provides for the filing of a motion to suppress evidence in delinquency proceedings. See La.Ch.Code art. 872. However, the Children’s Code does not provide the procedural steps in considering a motion to suppress evidence filed in a juvenile proceeding. Thus, as mentioned above, we turn to the Louisiana Code of Criminal Procedure for the proper procedure. See La.Ch.Code art. 104(1). In doing so, we *1286 further note that La.Code Crim.P. art. 703(F) provides that the “[f]ailure to file a motion to suppress evidence in accordance ■with this Article prevents the defendant from objecting to its admissibility at the trial on the merits on a ground assertable by a motion to suppress.” See also In the Interest of Nunez, 94-2636 (La.App. 4 Cir. 6/7/95), 657 So.2d 506.
We conclude that J. F.’s failure to file a motion to suppress his statement and failure to object to its admissibility preclude his challenge to the statement’s admissibility on appeal. Therefore, we find no merit in this assignment of error.

Assignment of Error Number Two

J. F. argues in his second assignment of error that the record contains insufficient evidence to support his adjudication. Specifically, he asserts that the evidence is insufficient to establish that he had the knowledge and intent to commit a forgery.
Louisiana Revised Statutes 14:72(A) provides that “[i]t shall be unlawful to forge, with intent to defraud, any signature to, or any part of, any writing purporting to have legal efficacy.” Additionally, “[ijssuing, transferring, or possessing with lfiintent to defraud, a forged writing, known by the offender to be a forged writing, shall also constitute a violation of the provisions of this Section.” La. R.S. 14:72(B). In interpreting these provisions as they apply to the matter now before us, La.R.S. 14:72(C) provides the following definitions:
(1) “Forge” means the following:
(a) To alter, make, complete, execute, or authenticate any writing so that it purports:
(i) To be the act of another who did not authorize that act;
[[Image here]]
(b) To issue, transfer, register the transfer of, pass, publish, or otherwise utter a writing that is forged in accor-
dance with the meaning of Subpara-graph (l)(a).
(c)To possess a writing that is forged within the meaning of Subparagraph (l)(a).
(2) ‘Writing” means the following:
(a) Printing or any other method of recording information;
[[Image here]]
(c) Symbols of value, right, privilege, or identification.
Given the fact that J. F. admitted possessing and transferring the four forged checks, the state was left only with establishing his knowing intent in committing the acts giving rise to the charges.
In arguing on appeal that he did not possess the knowledge and intent necessary to commit the forgeries, J. F. asserts that his testimony concerning the involvement of Brock and Caleb was not rebutted by the state, that he used his own identification documents and endorsed the checks with his own name, and that he was not aware the checks were stolen.
The record establishes that J. F. endorsed and cashed all four checks at issue. It also establishes that he visited with Aaron in Mr. Picard’s home and had physical access to the stolen checks. Who actually took the checks from the Picard home, who completed the front of the checks, and who benefited from the check proceeds are at issue. The state presented the testimony of Detective Arwood to establish that J. F. ^informed her that, not only did he endorse and cash the checks, but he also completed the front of the checks as well. Additionally, Detective Arwood testified that J. F.’s mother told her that the writing on the front of the checks appeared to be her son’s writing. This evidence was rebutted by the testimony of J. F. and his mother.
J. F. asserted at trial, as he did in his statement to Detective Arwood, that he was doing a favor for Brock and Caleb. *1287 He denied ever telling Detective Arwood that he completed the front of the checks, asserting that he received the checks from Brock and Caleb already completed. He claims to have met these two men at a basketball court while in the company of Aaron. Other than that, he provided the court with little or no information concerning them. Additionally, he did not explain why these men completed the checks with him as payee.
While the trial court did not provide this court with specific reasons for J. F.’s adjudication as a delinquent, we find no error in that determination. The state provided evidence that J. F. had the opportunity to steal the checks, that he completed the checks, and that he endorsed and cashed the checks. The trial court obviously did not believe J. F.’s self-serving testimony concerning his relationship with Brock and Caleb or his explanation about how the checks came to be made out to him. Applying the standard required in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and viewing the evidence in the light most favorable to the state, we conclude that all of the elements of the offense of forgery were established beyond a reasonable doubt. Therefore, we find no merit in this assignment of error.

Assignment of Error Number Three

In his final assignment of error, J. F. asserts that the state established, at best, the elements of misdemeanor theft of $130.00, and not forgery. He bases this argument on the assertion that the state presented specific evidence of only one of the Isfour transactions, the $130.00 check both he and Andre endorsed, through the testimony of Detective Arwood and the video introduced into evidence. This argument ignores the evidence presented by Detective Arwood concerning J. F.’s statements to her as well as J. F.’s own testimony. We find this assignment has no merit.

Errors Patent

Louisiana Code of Criminal Procedure Article 920(2) requires that we review all appeals for errors “discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence.” We have performed an errors patent review in this matter and find matters that must be addressed.
The trial court failed to inform J. F. of the two-year prescriptive period for filing for post-conviction relief as required by La.Code Crim.P. art. 930.8. Although the Children’s Code contains no similar provision, this court has previously held that this notice should be given. State in the Interest of J.C.G., 97-1044 (La.App. 3 Cir. 2/4/98), 706 So.2d 1081. Therefore, we must remand this matter to the trial court for compliance with this requirement.
Next, we note that the trial court failed to give J. F. credit for predisposition time served in a secure detention facility. Louisiana Children’s Code Article 898(A) provides, in pertinent part, that “[t]he court shall give a child credit for time spent in secure detention prior to the imposition of disposition.” While we recognize that the 1997 amendment to La.Code Crim.P. art. 880 releases us from recognizing the trial court’s failure to give credit for time served as an error patent in adult criminal cases, we also recognize that the legislature did not amend La.Ch.Code art. 898(A). Consequently, we find it necessary to continue to recognize as an error patent the trial court’s failure to give credit for time served in juvenile cases. In recognizing this |9error patent, we amend the disposition imposed by the trial court to give J. F. credit for the time served in a secure detention facility before imposition of disposition. See La.Code Crim.P. art. 882(A). Additionally, we remand this matter to the trial court with instructions to amend the commitment and minute entries *1288 of the disposition to reflect credit for time served in conformity -with La.Ch.Code art. 898(A).
Finally, we find that the trial court erred in ordering J. F.’s parents to pay restitution to the bank. See State in the Interest of R.L.K., 95-1277 (La.App. 1 Cir. 12/19/95), 666 So.2d 427, writ denied, 95-3120 (La.1/26/96), 666 So.2d 1084. We correct this sentence by vacating that portion which is illegal. Additionally, we remand this matter to the trial court with instructions to amend the commitment and minute entries of the disposition to reflect deletion of this provision.
DISPOSITION
We affirm J. F.’s adjudication as a delinquent. However, we amend his disposition to reflect that he is given credit for the time served in a secure detention facility before disposition and to vacate that portion of the disposition requiring J. F.’s parents to make restitution to MidSouth National Bank. We remand this matter to the trial court and order the trial court to amend the commitment and minute entries of the disposition to reflect credit for time served and deletion of the requirement that J. F.’s parents make restitution. We further order that the trial court inform J.F. of the two-year prescriptive period provided for in La. Code Crim.P. art. 930.8 by sending him appropriate written notice within ten days of the rendition of this opinion and by filing, in the record of the proceedings, written proof that J. F. received the notice.
AFFIRMED IN PART, VACATED IN PART, AND REMANDED WITH INSTRUCTIONS.
WOODARD, J., dissents in part and assigns written reasons.

. To insure the confidentiality of the minor, we will refer to him by his initials. See Uniform Rules — Courts of Appeal, Rule 5-2.

. The videotape provided in the appeal record is defective and is of little use in evaluating the events of February 26. However, because of J. F.'s admissions, a clear video is not necessary for the disposition of this matter.