laSHORTESS, Judge.
On August 10,1993, the State of Louisiana charged Robert Bindon (defendant) with the felony offense of armed robbery, La.R.S. 14:64. On September 21, 1993, a jury found defendant guilty as charged. Defendant appealed. On appeal, he argues the trial court erred in accepting the armed robbery verdict because it was not supported by sufficient evidence. He specifically asserts the State did not prove beyond a reasonable doubt defendant robbed the victim with a dangerous weapon. He asks this court to vacate defendant’s armed robbery conviction and instead enter a judgment of first degree robbery.[2]
Defendant also filed a pro se brief alleging four additional grounds of trial court error. Defendant’s first two pro se assignments of error allege the police conducted improper identification procedures. His remaining assignments allege his counsel rendered ineffective assistance and the evidence was insufficient to convict him of a felony.[3]
FACTS
Celestine Stokes, the victim, drove to the Perkins Road Circle K convenience store on June 17, 1993, to buy $1,100.00 worth of money orders. She bought the unsigned money orders and returned to her car. She did not immediately drive away but chose to sign them inside her car, leaving her door partially open. Suddenly, she heard a voice that said, “Excuse me, Ma’am.” She looked left and saw a man at her door. Pressing an object with a barrel to her ribs, he allegedly told her not to “look” or “move,” and that he wanted “everything.” The victim noticed the object was partially covered by a gray towel. She gave the man her money orders, her wallet, and her black nylon bag. The man then |3instructed her to “start [her] car up and go.” He then ran to another car, jumped in the car’s passenger side, and the car sped away.
The victim’s car would not start, and she claims she was able to peek at the getaway car when it drove off, even remembering the number seven, the first number on its license plate. She immediately ran into the Circle K and phoned Baton Rouge Police. When Baton Rouge Police received the report, its dispatcher posted an all-points radio bulletin. Baton Rouge Police Corporal Wade Major had been traveling westbound near the Perkins Road entrance ramp to Interstate 110 *106 (I — 110). Minutes after the robbery occurred, a maroon Chevrolet Monte Carlo entered I-110 and also began traveling west ahead of Major’s unit. The Monte Carlo and Major’s car continued down 1-110 when Major heard the radio bulletin and noticed the Monte Carlo ahead matched the description of the getaway car. Major reported his observation and asked for back-up. He then chased it. Eventually, he and other officers forced the Monte Carlo to stop. Officer Darrell Beird arrested the driver while Detective Eugene Smith ran after and arrested one of the two men who fled from the Monte Carlo.
Inside the Monte Carlo the officers found the victim’s money orders, her black nylon bag, and a Tech-9 nine-millimeter gun with a loaded eighteen-round clip.
The officers brought the two men to the police station where the victim later arrived and positively identified defendant, the man arrested by Detective Smith, as the robber. She also recognized the Monte Carlo as the same maroon car the robber jumped into before leaving the scene. It had primer spots and a license plate beginning with the number seven.
At trial, the State presented the jury with the above evidence, and it found defendant guilty of armed robbery, a robbery using a dangerous weapon: the Tech-9 gun. Defendant argues the jury should have convicted him of first degree robbery rather than armed robbery because the State failed to prove beyond a reasonable doubt defendant used an actual dangerous weapon. He contends the object pressed against the victim’s ribs was covered by a towel and since the victim could not see all of the object, her testimony that it was a weapon: an | /‘instrumentality, which, in the manner used, is calculated or likely to produce death, or great bodily harm,” La.R.S. 14:2(3), is not credible. Defendant asserts the object could have been a fake gun instead of a real gun. “The fact that a gun was found in the ear with Bindon and that [the victim] said she believed it was the weapon does not prove the element,” he defends.
This court must now decide whether the trial court was correct in accepting the jury’s verdict.
LAW
ASSIGNMENT OF ERROR NO. 1: The trial evidence was insufficient for a rational jury to find the State proved beyond a reasonable doubt defendant used a dangerous weapon.
A motion for post verdict judgment of acquittal before the trial court is the proper procedural vehicle for raising the insufficiency of the evidence issue. La.C.Cr.P. art. 821. Nevertheless, we will consider an insufficiency of the evidence claim that, in this case, has been briefed pursuant to a formal assignment of error. State v. Leagea, 554 So.2d 833,835 (La.App. 1st Cir.1989).
Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), enunciated the standard of review applicable to claims challenging the sufficiency of evidence. See also La.C.Cr.P. 821(E).[4] Our Louisiana Supreme Court quoted Jackson in State v. Mussall, 523 So.2d 1305 (La.1988), and said:
If the court finds that no rational trier of fact viewing all of the evidence from a rational pro-prosecution standpoint could have found guilt beyond a reasonable doubt, the conviction cannot stand constitutionality. The actual trier of fact’s rational credibility calls, evidence weighing and inference drawing are preserved through the requirement that upon judicial review all of the evidence is to be considered as if by a rational fact finder in the light most favorable to the prosecution, and by the admonition that the sufficiency inquiry does not require a court to ask itself whether it believes that the evidence at trial established guilt beyond a reasonable doubt.
*107 Mussall, 52B So.2d at 1311. The State’s brief also correctly cites State v. Probst, 623 So.2d 79, 83 (La.App. 1st Cir.), writ denied, 629 So.2d 1167 (La.1993), where we said we would not assess witness credibility or reweigh evidence 15to overturn the fact finder’s determination of guilt. State v. Salat, 95-0072, p. 8 (La.App. 1st Cir. 4/4/96), 672 So.2d 333, 338, writ denied, 96-1116 (La. 10/4/96), 679 So.2d 1378. Appellate courts give much deference to the trier of fact’s factual findings. The Jackson standard of review does not allow an appellate court to opine whether it believes the trial evidence established guilt beyond a reasonable doubt. Instead, the standard requires a court to consider whether a hypothetical jury, viewing all evidence in the light most favorable to the State, could have found the essential criminal elements beyond a reasonable doubt. Mussall, 523 So.2d at 1309. See also State v. Pittman, 93-0892, p. 5 (La.App. 1st Cir. 4/8/94), 636 So.2d 299, 302. In this case, we must decide whether, viewing the gun evidence in the light most favorable to the State, a rational jury could have found beyond a reasonable doubt the object pressed against the victim’s ribs was a dangerous weapon.
Louisiana Revised Statute 14:64 defines an armed robbery as a robbery, “while armed with a dangerous weapon.” Revised Statute 14:2(3) defines dangerous weapon as “any ... instrumentality, which, in the manner used, is calculated or likely to produce death, or great bodily harm.” In this assignment of error, defendant does not contest the robbery elements or his identity as the perpetrator but only the dangerous weapon element.
The record contains the victim’s testimony that she saw the object’s barrel and clip while defendant used it to rob her. Defendant accepts this testimony but argues the towel prevented the victim from seeing the object in its entirety and, therefore, her testimony cannot be used to prove the dangerous weapon element. We believe a rational jury could have decided the object, which the victim described in part, was the same gun police found minutes later in the getaway car. Although the towel prevented a complete description, it would be reasonable to conclude the gun found in the Monte Carlo was the gun defendant used to rob the victim. No other gun was found in the Monte Carlo. Major followed the Monte Carlo westbound when it entered 1-110 at Perkins Road (presumably minutes after fleeing down Perkins Road away from the Circle K) and actively pursued it after | she heard the radio bulletin. He never mentioned at trial that he saw defendant, the driver, or the other man throw anything out the window during his pursuit. When the Monte Carlo did stop, the officers found the victim’s property in it. They also found the Tech-9.
We find the direct evidence and the inferences from the circumstantial evidence to be very strong.[5] All inferences from the evidence must also be reasonable. Moreover, the principal criterion of a Jackson v. Virginia review is rationality. Mussall, 523 So.2d at 1310. Was the jury’s decision to convict defendant of armed robbery irrational? We do not think so. A hypothetical jury could reasonably infer defendant used the Tech-9 gun to rob the victim because: 1) the victim said the object had a clip, and the Tech-9 has a clip (a clip is not universal to all handgun models so its presence weighs in favor of the conclusion the Teeh-9 was the actual gun used in this robbery); 2) defendant’s almost immediate capture after the robbery supports the conclusion that defendant did not get the Tech-9 between robbing the victim and being arrested; 3) no party presented evidence suggesting defendant threw any object from the Monte Carlo during the car’s attempted escape; and 4) police found no other gun except the Tech-9 in the Monte Carlo.
PRO SE ASSIGNMENT OF ERROR NO. 1 AND NO. 2: Police used an unnecessarily suggestive out-of-court lineup identificar tion procedure (a one-on-one station house lineup) that prejudiced him and that also tainted the later in-court identification.
Defendant alleges in his pro se brief that after mistakenly being arrested for the *108 robbery, police took him to the station house where they put him in a holding cell. While waiting for police to process his arrest, he alleges an officer called him out of the cell and told him to face a large glass window. Then, after a few seconds, the same officer returned him to his cell. He claims the victim, in an observation room, identified him from this “one-on-one” lineup and it was unduly prejudicial and unnecessarily suggestive, so it violated his due process rights.
frOne-on-one identification lineups are inherently suggestive. Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969). However, the record does not corroborate defendant’s story. The victim testified she identified defendant from among at least four other arrestees behind the glass identification window. Major also testified there were about six to eight arrestees in the booking area that day. The record opposes defendant’s one-on-one lineup theory, and it does not contain evidence upon which we could decide whether the five-man lineup was unduly prejudicial or unnecessarily suggestive. Thus, defendant’s first assignment of error lacks merit.
His second assignment of error is based on the first assignment (arguing the in-court identification was flawed because it was based on the alleged improper out-of-court identification). We find no evidence in the record which persuades us the out-of-court identification was unreliable. Therefore, it could not have tainted the in-court identification. Assignment of error number two also lacks merit.
However, though not listed as a formal assignment of error, defendant further argues he was misidentified by police at the scene. He claims he was not the robber, was not in the Monte Carlo when it was stopped, and only ran because he was holding drugs and feared arrest for drug possession. He also claims the Monte Carlo’s driver told police that defendant “was not one of the people that was in his car.” On this issue, where defendant disputes his identity as the perpetrator, the State must negate any reasonable probability of misidentification. State v. Jones, 94-1098 (La.App. 1st Cir. 6/23/95), 658 So.2d 307, 311, writ denied, 95-2280 (La. 1/12/96), 666 So.2d 320. But again, the record does not support his defense. Officer Smith testified defendant was the person he saw flee the Monte Carlo after it stopped. Smith testified he was sure defendant was the person whom he chased and eventually arrested. He also said he never lost sight of the suspect during the brief chase. Major and Beird, other arresting officers, corroborate Smith’s testimony that two men fled the Monte Carlo’s passenger side, that defendant was one of those two men and that he was lathe person whom Smith stopped and arrested seconds later. Additionally, the record does not contain any testimony that the Monte Carlo’s driver told police defendant was not one of the people in the car that day. Defendant’s defense on this ground lacks merit.
Defendant’s last allegation that he was misidentified rests on the victim’s credibility. He claims the victim failed to give police a sufficient description since she did not notice his alleged mustache and beard, bandaged arm, or clothing. However, the victim did correctly remember defendant had spaces between his teeth and orange shorts. She viewed him when he stood but a few feet from her. She firmly believed defendant was the man who robbed her. Positive identification by only the victim may be sufficient to support defendant’s conviction. State v. Jones, 94-1098, at 5, 658 So.2d at 311. The three arresting officers corroborated the victim’s identification of defendant as the robber by affirmatively testifying defendant was the man who fled the Monte Carlo and who was arrested seconds later. We have considered the whole record and find no error in the jury’s conclusion. Though not absolute, the evidence was sufficient to support the witnesses’ identification of defendant as the armed robber. The State negated any reasonable probability of misidentification. Id.
ASSIGNMENT OF ERROR NO. 3: Defendant was denied his Federal and State Constitutional right to effective assistance of counsel.
Defendant claims his trial attorney failed to render effective assistance when she *109 advised him that he should not testify on his own behalf, and failed to call two alibi witnesses.
Initially, we note that a claim of ineffective counsel is more properly raised by an application for postconvietion relief in the trial court where a full evidentiary hearing can be held. State v. Hicks, 554 So.2d 1298, 1306 (La.App. 1st Cir.1989), writs denied, 559 So.2d 1374 (La.1990), and 604 So.2d 1297 (1992). However, if the record contains evidence needed to decide the above issue and it is raised by an assignment of error, we may address it for judicial economy’s sake. Id.
|9We evaluated this ineffective assistance of counsel assignment of error under the Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) two part test. The two parts of the test are:
First, the defendant must show that counsel’s performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the ‘counsel’ guaranteed the defendant by the Sixth Amendment.
Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel’s errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064; Hicks, 554 So.2d at 1306. (Emphasis added.)
Defendant does have a constitutional right to testify on his own behalf. La. Const. Article 1, § 16. However, if it was his attorney’s decision not to call him to the witness stand, that decision alone would not render her performance deficient.[6] She was exercising her professional judgment. She made a strategic decision. Defendant acknowledges that if he would have taken the witness stand, he would have testified about his drug use and other incriminating behaviors, possibly causing him more damage than if he remained silent. Apparently, he chose to follow his attorney’s professional advice and now cannot complain on appeal. The first part of the Strickland test is not satisfied.
Additionally, if defendant’s mother and wife had testified at trial, they might have corroborated defendant’s story, though no evidence in the record supports this claim. Even arguendo, if defendant’s attorney was deficient in failing to call these identification witnesses, defendant’s defense was not prejudiced because sufficient evidence already existed upon which to find the victim’s identification was reliable. Thus, the second part of the Strickland test is not satisfied. But, defendant may still apply for postconviction relief on this ground. Hicks, 554 So.2d at 1306.
CONCLUSION
hoTherefore, we hold that after viewing all the evidence in a light most favorable to the State, the jury could have rationally concluded the State proved beyond a reasonable doubt defendant used the Tech-9 to rob the victim. Obviously, the jury so concluded. Defendant’s pro se assignments of error are likewise without merit. The trial court did not err in accepting the jury’s verdict.
AFFIRMED.

. Louisiana Revised Statute 14:64.1 defines first degree robbery as:
A. First degree robbery is the taking of anything of value belonging to another from the person of another, or that is in the immediate control of another, by use of force or intimidation, when the offender leads the victim to reasonably believe he is armed with a dangerous weapon.

.Defendant's last assignment of error, a patent error review request concerning his habitual felon status, is discussed in the companion case, State of Louisiana v. Robert Bindon, 687 So.2d 100, also decided this date.

. Article 821(E) reads: “If the appellate court finds that the evidence, viewed in a light most favorable to the state, supports only a conviction of a lesser included responsive offense, the court, in lieu of granting a post verdict judgment of acquittal, may modify the verdict and render a judgment of conviction on the lesser included responsive offense.”

. Revised Statute 15:438’s circumstantial evidence rule says the evidence must exclude every reasonable hypothesis of innocence.

. Defendant indicates in his pro se brief that his attorney “did not allow” him to testify. But on the same page, defendant indicates his attorney advised him "it would be in his best interest not to take the witness stand.” It appears the attorney advised against him doing so but did not actively prevent defendant from testifying. Defendant seemingly could have chosen to do so.